MARY F. K. MICHAEL, RESPONDENT, v. HARRY W. MIN-CHIN, APPELLANT.

Submitted March 26, 1917—Decided June 18, 1917.

The testator devised to his wife for life his real estate and after her death to his three children, each a distinct parcel specifically described, subject, among others, to this proviso: "In Case my Son Harry W. Minchin Should depart this life without Issue His Share will go to my Dauter Emma Jane Minchin;" Harry survived the life tenant and Emma died during the life tenancy, leaving a child. The life tenant conveyed to Harry all her interest in the lands devised to him. *Held*, that Harry having survived the life tenant and the executory devisee, Emma, his estate in the land devised to him became absolute for two reasons—(a) because the words "depart this life without issue" were properly referable to the death of the life tenant and not to the devisee, applying *Patterson* v. *Madden*, 54 *N. J. Eq.* 714; (b) that by the death of the executory devisee, Emma, in the lifetime of Harry, the gift over became impossible of performance, and that the estate of Harry, the first taker, became absolute, applying *Den* v. *Schenck*, 8 *N. J. L.* 29, and *Drummond's Executor* v. *Drummond*, 26 *N. J. Eq.* 234.

On appeal from the Essex County Circuit Court.

George Minchin died leaving a last will and testament in which, by the first paragraph, he devised to his wife for life his real estate, and at her death to his three children, Harry, Emma and Adeline, each a distinct parcel specifically described, and to his son Abraham $3,000, subject to the following conditions:

"Should death take my Dauter Addeline or She do not have anny Issue Children living at her death her Part will be divided between my Son Harry W. Minchin and my dauter Emma Jane Minchin in Case my Son Harry W. Minchin Should depart this life without Issue His Share will go to my Dauter Emma Jane Minchin if Emma Should depart this life without (Issue Children) her Share Should go to my Son Harry W. Minchin in Case of my (three 3) last mentioned children depart this life without Issue then the whole Shall go to my Son Abraham C. Minchin.

"Second—I leave to my wife Mary Jane my life Insurance Poliseys and when Paid She Should Pay my Son Abraham C. Minchin his Share $3000.00/100 out of it besides in Say Sixty days after or as can be done I leave my Wife Mary Jane all My Personal Property for her lifetime and at her death it Shall go to my Son Harry W. Minchin if alive and if not alive to my Dauter Emma Jane and is not alive to my Dauter Addie L. La Bough and if She is dead to my Son Abraham C. Minchin but at anny time during my wife life if She wish she can give to my son Harry or my Dauter Emma anny or all Parts of what was left to them besides She is to Seport them untill the are of age in as good a way as it will Alow I diret my Exectiors to Pay all my lawful deaths."

The testator left him surviving his widow and the four children mentioned in the will, which was probated August 8th, 1892. The widow is dead, and of her children three died in her lifetime, Abraham without issue and Adeline and Emma leaving issue; Harry is still alive and has two children living.

The widow conveyed her life estate in the land devised to Harry, to him, and he and his wife conveyed the land, the subject of this suit, to the plaintiff by a deed containing a special covenant of seizin in fee-simple, and the plaintiff brought this action to recover damages for an alleged breach of that covenant because, as she claims, Harry has not an indefeasible estate, but one that is subject to the gift over to Emma if he should die at any time without leaving issue.

For the appellant, *Arthur H. Mitchell.*

For the respondent, *Lum, Tamblyn & Colyer.*

The opinion of the court was delivered by

BERGEN, J. Upon the foregoing facts the trial court held, a jury being waived, that the estate of Harry was a fee-simple, subject to a defeat upon his death at any time without issue, in which event the executory devise over to his sister Emma J. Minchin, who died in his lifetime, vested in her heirs or devisees, and that Harry's estate remained defeasible until after his death leaving issue, and ordered judgment entered for the plaintiff, from which the defendant has appealed.

The result reached by the court below is erroneous, for reasons to be stated. The trial court disposed of the case without at all considering the effect of the intervention of the life estate of the widow, and the postponement of the right of possession of Harry until after the death of the life tenant.

Passing for the present the consideration of the question concerning the character of the estate which Emma took under this will if she died before Harry, to be hereinafter dealt with, and assuming that there are two gifts after the life estate, one to Harry, defeasible upon his death at any time without issue, and another, the remainder, to his sister Emma in that event, the limitation over, in such case, will be referred either to the death of the first devisee, or of the life tenant, as the court may determine from all the provisions of the will, because it should be so construed as to give effect to the intent of the testator ascertainable from his will.

In the present case, the will should be so construed as to refer the death of Harry without issue, to death in the lifetime of the life tenant. "Where the two concurrent or alternative gifts are preceded by a life, or other partial interest, or the enjoyment under them is otherwise postponed, the way is open to a third construction, namely, that of applying the words in question (depart this life without issue) to the event of death occurring before the period of possession or distribution." 3 *Jarm. Wills* 648.

In *Paterson* v. *Madden*, 54 *N. J. Eq.* 714, 723, Chief Justice Gummere, in a well-considered opinion read for this court, declared that two rules are established in this state, in the construction of wills containing a limitation over by way of an executory devise after the death of the original devisee without issue, and they are stated by him as follows:

"*First.* If land be devised to A in fee and a subsequent clause in the will limits such land over to designated persons in case A dies without issue, and A so dies, and the substituted devisees are *in esse* at his death, and there is no other event expressed in the will to which the limitation over can fairly be referred, then A takes a vested fee which becomes divested at his death and vests in those to whom the estate is limited over.

"*Second.* Where there is an event indicated in the will other than the death of the devisee to which the limitation over is referable (for instance, the distribution of the testator's estate or the postponement of the enjoyment of the property devised until the devisee reaches the age of twenty-one or until the exhaustion of a prior life estate), such limitation over will be construed to refer to the happening of such event or to the death of the devisee, according as the court may determine from the context of the will and the other provisions thereof, that the limitation clause is set in opposition to the event specified or is connected with the devise itself."

It will be observed that under the first rule the substituted devisees must be *in esse* at the death of the first taker, which is not the condition in the case under consideration, for here

the executory devisee died in the lifetime of the first taker and during the existence of the life estate.

In the Paterson case the will gave certain farms to his four sons upon condition that neither of the farms should be sold by his sons during the lifetime of his wife, with a proviso that if either should die without lawful issue, the widow of the one dying should have the use of the farm given to the son so long as she remained unmarried, and on her marriage or decease, over to his lawful heirs, and it was there held that the limitation over stood, not in opposition to the devise, but to the event of the devisees coming into possession, and that the limitation over became operative only in case the prior devisee died without issue before the death of his mother, and the case of *Williamson* v. *Chamberlain,* 10 *N. J. Eq.* 373, was cited as an example of the application of the second rule. In that case there was a gift of a life estate to a wife in real and personal property with remainder to his children, upon condition that if any of his children should die without lawful issue, his or her share should be divided between the survivors, and it was held that the limitation over stood, not in opposition to the devise, but to the distribution to the children after the death of the wife, and that the limitation over was defeated by the death of the mother during the lifetime of the children. Under the cases referred to, supported by numerous citations not necessary to be here repeated, the present will should be construed to mean that testator intended, if Harry survived his mother his estate should become absolute, for the words "should depart this life without issue," are properly referable to death without issue during the life tenancy. This interpretation of the intent of the testator is aided by the second paragraph of the will where the personal estate is given to the widow for life and at her death to Harry, if alive, and if not alive, to Emma, "but at anny time during my wife life if She wish She can give to my Son Harry or my Dauter Emma anny or all Parts of what was left to them." This will was, evidently, drawn by an illiterate person, and is crudely expressed, but it is reasonably subject to interpretation that the wife was author-

ized to turn over to Harry any part of what was left him by the will when he came of age, for until that period the wife was required to support him in "as good a way" as his share would allow.

That the power of appointment given to the wife, to be exercised at any time she might wish, was not intended to be limited to the personal estate, may be inferred from the fact that Emma is given no part of the personal estate unless she was alive at her brother's death, and therefore the gift to Emma of all part of what was left her, if the life tenant so wished, would be without meaning unless it referred to something that had been left to, and which could be advanced to, her, and so, when the wife exercised her power of appointment by conveying to Harry the land that was left to him, she accelerated, as she had a right to do, the period of distribution as to Harry, but whether this be so or not, we have no doubt that the testator intended Harry to have his share, if he survived his mother, and that the executory devise to Emma was dependent upon his death without issue in the lifetime of his mother, and as he survived her his estate became absolute.

The trial court was also in error in holding that notwithstanding the death of Emma, the executory devisee, in the lifetime of her brother Harry, she had an estate which passed to her child, and that the child will take the land, by inheritance from her mother if Harry should at any time die without issue. The gift to Emma was a personal one, there being no gift over in case of her death. Under the common law she would have taken a life estate, but by virtue of our statute concerning wills (*Comp. Stat., p.* 5873, § 36) her estate becomes absolute if the prior estate fails by death of Harry without issue, if she be *in esse,* and the situation is the same as if the devise over to her was absolute, so her children can only take by inheritance from her and not by purchase under the will, for there is no gift to her children or legal representatives.

By the death of Emma before the gift over to her took effect, the object of such gift was not in existence, and there-

fore it became impossible of performance. In such case the prior estate becomes absolute in the first devisee. In *Den* v. *Schenck,* 8 *N. J. L.* 29, the testator gave to his son Gilbert and his two daughters each a parcel of land with the proviso "that if any of my children should happen to die without any issue, that such share or dividend shall be divided by the survivors of them." Of the daughters, one died without issue, and another, Hannah, died during the lifetime of Gilbert, who, subsequently, died without issue. Hannah left children, and after the death of Gilbert, who had conveyed to the defendant Schenck, Hannah's children brought an ejectment suit based upon the claim that their mother had an inheritable estate which passed to her heirs at the death of Gilbert without issue. The court held that Gilbert took an estate in fee, subject to defeasance upon the happening of two events, death without issue and the survival of the sisters, and said: "When his two sisters died it became impossible that the estate should be defeated by going over to survivors when there were none; from that time it became an absolute fee-simple in Gilbert."

In that case it will be observed there were children of Hannah claiming an inheritance from her, property she would have taken if she had survived Gilbert, he dying without issue.

The rule laid down in that case is that where there is a gift over and it becomes impossible of performance through the death of its object, nothing more being present, the estate of the first taker becomes absolute. The statute making an estate absolute where the words "heirs and assigns" are omitted, and where there is no expression in the will whereby it shall appear that it was intended to convey only a life estate, as it now appears in our statute relating to wills, section 36, was then in force, it having been passed August 26th, 1784, and was not in *Den* v. *Schenck, supra,* considered as vesting an inheritable estate in executory devisees if they did not survive the first taker. That case was decided in 1824, and has been uniformly recognized by our courts as establishing in this state the legal rule, that where there is a

gift to one, and then over to another if the first taker dies without issue, the executory devisee must be alive to take at the termination of the prior estate, and in default of the existence of the object of the gift over, the prior estate becomes absolute. *Groves* v. *Cox,* 40 *N. J. L.* 40, 45.

This rule was adopted and applied by Chancellor Runyon in *Drummond's Executor* v. *Drummond,* 26 *N. J. Eq.* 234, where the gift was to testator's adopted daughter "when she arrives at full age," and if she should die without leaving lawful issue, then to his nephew. The daughter lived to come of age and the nephew predeceased the testator. The children of the nephew claimed that the daughter only took an estate defeasible in the event of her death without issue at any time, and if that happened, they would be entitled as next of kin of their deceased father, but the Chancellor held that by the death of the nephew the estate of the daughter became absolute, saying: "The provision made in the contingency of her dying without leaving lawful issue, was made expressly for another object of his bounty whom he desired and intended to benefit in that event, that object had ceased to exist, and the provision, therefore, was at an end and the primary gift was left wholly unaffected by it. The testator did not provide that Jane should have a life estate merely, and that after her death the property should go to her children, if she should leave any, but he gives the property to her without qualification in the gift. The principle of the rule that, where there is an estate in fee liable to be defeated on a condition subsequent, and that condition originally was, or by matters subsequent, has become impossible to be performed, the defeasible estate is made absolute (*Co. Litt.* 206a), applies to this case, for the estate was made liable to be defeated by a gift over, which could never, by possibility take effect, and the primary gift, therefore, is the same as if there were no provision for its defeasance." The trial court refused to apply this case because the nephew died in the lifetime of the testator, apparently overlooking the declaration of the Chancellor that the rule applied when the condition "originally was, or, by a *matter subsequent,*" became im-

possible of performance. The court below also refused to apply *Den* v. *Schenck, supra,* upon the ground that the gift over was to survivors of testator's children, and that in the will now under consideration there is nothing to indicate an intention that the share of his son Harry should go to his sister Emma only in the event that she should survive him, but this begs the question for it assumes that under a proper construction of this will, Emma took an indefeasible estate after the death at any time of Harry, even if she did not survive him, which is the very matter in dispute. Nor is there any force in the notion expressed by the trial court that there is a distinction between an executory bequest to the survivors of a class of devisees and one to a single devisee, because the word "survivors," when so used, merely describes the object or objects who are to take the gift over because in existence when the prior devise fails, which may be one or more persons.

As the court below relies to some extent upon the case of *Seddel* v. *Wills,* 20 *N. J. L.* 223, and quotes at some length from it to sustain its conclusion that although Emma died before her brother Harry, the estate given her vested in her heirs or devisees, if Harry thereafter died without leaving issue, a short analysis of that case seems to be required.

The facts in that case, pertinent to the present occasion, are these: The testator had three sons and six daughters and one grandchild, and devised to each of his sons and daughters a specific tract of land, and to his granddaughter a money legacy. He then provided that if either of his children should die without lawful issue, the land devised to them should be equally divided between his surviving children. Two of the daughters died without leaving issue; the three sons died leaving issue, two of them before both of their sisters and the other after the death of one, and before the death of the other sister, another daughter died after her two sisters, leaving issue, and the three other daughters and the granddaughter named in the will were still alive.

Chief Justice Hornblower, in determining the respective interests of the granddaughter named in the will and of tes-

tator's other grandchildren, the issue of his three sons, states two possible constructions of the will depending upon whether the devise over was to *all his other children* or only to such of them as should actually survive the one dying without issue, and then said: "Upon the supposition, that the devise over was to all his other children, then, immediately upon testator's death, they each become seized of, or entitled to, an executory devise in fee in each other's lands, subject to be defeated upon the others leaving issue at the time of their death; and, consequently, if one died leaving issue after the testator, but before the death of a brother or sister without issue, the issue of the one so first dying would take a share of the land of the one dying without issue; not as devisees of the testator, nor yet as heirs of the one dying without issue, but as heirs-at-law of his or her deceased father or mother, although such deceased father or mother did not die seized of the land in possession, but seized only of the executory interest or estate." It is upon this citation that the trial court rested its decision, but Chief Justice Hornblower did not construe "my surviving sons and daughters" to mean all his other children, for, following the statement above quoted, which applied to "the supposition that the devise over was to *all* his other children," he said: "I was at first inclined to adopt this view of the case; but, upon further reflection, and upon looking at the whole scope and tenor of this will, I think it is not necessary to depart from the plain common sense and grammatical meaning of the language of the testator. There is nothing in the will to indicate any intention in the testator that the children of a deceased child, whether dying before or after him, should stand in *loco parentis;* nor any necessity to adopt such a construction for the purpose of effectuating any manifest intention of the testator, or satisfying the rules of the law.

"On the contrary, the peculiarity of the devise to the three sons, and the limitation over only of what he devised to Samuel and Thomas, and the substitution of a mere legacy to his granddaughter Rebecca, in the place of real estate which the testator originally intended to give to her mother,

show that the grandchildren were not viewed or thought of by him as immediate objects of his bounty in respect to his real estate," and he determined that upon the death of the two daughters without issue, the land devised to them belonged by force of the will "to the brothers and sisters then actually living, to the exclusion of the children of the deceased brothers and sisters, and of the testator's granddaughter Rebecca," and that the surviving brothers and sisters took their respective shares in fee-simple and not contingent upon any future event. As one of the daughters survived her sister who died without issue, it was held that she, surviving her sister, became entitled to her share of the deceased sister's land in fee-simple. It thus appears that the construction relied upon by the trial court was not adopted by the Chief Justice in dealing with a condition similar to the one in this case, and the result which he reached affirmed the principle laid down by the court in *Den* v. *Schenck, supra.*

The result of the views above expressed is that the defendant's death without issue is referable to his death in the lifetime of the life tenant, and if he survived her his title became absolute, and also that the gift over failed by the death of Emma, in the lifetime of her brother Harry, because the object of the gift over, being removed, the executory devise became impossible of performance, and the prior estate became absolute, and in either event the defendant became seized of an indefeasible estate, and, therefore, there was no breach of the covenant, contained in his deed to the plaintiff, that he was seized of a fee-simple estate. This requires a reversal of the judgment under review and the awarding of a *venire de novo,* and it is so ordered.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 14.