## Williams and Wife *versus* Leech *et al.*

A testator devised, "I give and bequeath unto my daughter E. A., a lot or piece of ground (describing the lot) at the death of her mother." And in a subsequent clause of his will directed as follows: "It is my will that neither of my children shall sell or convey any part of the real estate hereby willed to them, but shall receive the rents, issues, and profits thereof during their natural lives, and after their or either of their deaths, their portions shall be equally divided among their children and their heirs; and if either of my children should die without issue, their portion shall be equally divided among the survivors." E. A. was afterwards married and had three children, all of whom were dead. *Held,*

1. That the will being under the Act of 8th April, 1833, by the devising clause, a fee simple was granted to E. A.

2. The limitations contained in the clause afterwards inserted, are not inconsistent with a fee being limitations, to the heirs of the first devisee—first to the lineal, then to the collateral, being together to her heirs generally.

3. Being a devise to E. A. for life, with remainder to her children in fee, it vested in the children when born, and opened to let in others born afterwards, and descended on their death to their parents, and the devise over fell entirely.

4. Since the act of 1833, an estate tail general may descend according to our law of lineal descents; and hence, a devise to children, to take distributively, is a valid definition of lineal descent, and therefore of entailment. Per LOWRIE, J.

5. Persons who might be interested in the estate, are properly made parties to the bill, and if minor children are improperly made parties, it will not affect the rest of the bill.

APPEAL from Nisi Prius.

George W. Williams and Emily Anna Williams his wife, filed this bill in equity, against Charles Leech and Others, to compel the specific performance of a contract for the sale of land. Henry Naglee, late of Philadelphia, father of Emily A. Williams, died in 1836, having first made his last will and testament in writing, dated 11th August in the same year. In the first clause of the will he devised to his wife as follows: "I give and bequeath unto my beloved wife Mary Elizabeth, during her natural life, provided she remain my widow, all the rents, interest, income, and profits of all my estate real and personal whatsoever and wheresoever, excepting what is hereinafter excepted, subject to the maintenance and education of my children, the payment of taxes, and all necessary repairs."

Then after devising certain property to his daughters Margaret C. and Elizabeth L., respectively, he devised to complainant as follows:—

"Item. I give and bequeath unto my daughter, Emily Anna, a lot or piece of ground fronting on Wood's Lane or Lamb Tavern Road, in the county of Philadelphia, bounded on the south by land late of Moses Nathans, partly by the railroad, and partly

by the road leading to the Falls of Schuylkill, and on the north line by land late of Joseph Knox, containing 28 acres more or less, at the death of her mother. I also give and bequeath unto my said daughter, Emily Anna, all that lot or piece of ground situate on the south-east corner of Coates and Eleventh streets, in Penn Township in the county of Philadelphia, containing in front on Coates street, ninety-five feet four and a half inches, on Eleventh street, one hundred and eighty-five feet four inches or thereabout to Melon street, and sixty-five feet on said Melon street, together with all the improvements thereon erected, when she attains the full age of twenty-one years."

Then after devising certain other real estate to his daughter Caroline Smith Naglee, he introduced the following clause :—

"Item. It is my will that neither of my children shall sell or convey any part of the real estate hereby willed to them, but shall receive the rents, issues, and profits thereof during their natural lives, and after their or either of their deaths, their portion shall be equally divided among their children and their heirs; and if either of my children should die without issue, their portion shall be equally divided among the survivors."

Emily A. was married to George W. Williams in 1844, and had three children, all of whom died before the filing of this bill. And on the 20th October, 1854, he and his wife made an article of agreement with Charles Leech to convey to him in fee simple in consideration of $200, a certain lot, part of the real estate devised by her father to the said Emily A., situate on the south-east corner of Huntingdon and Seventeenth streets in the city of Philadelphia, and agreed to convey to him " a good title in fee simple, subject only to the interest therein devised by testator to his wife Mary E. Naglee, and also to the estate and interest (if any) of any child or children of the said Emily Anna Williams, which may hereafter be born, and the said Charles Leech agrees to pay said sums and accept a conveyance therefor."

The bill charges that the complainants had offered to make and execute a conveyance to the defendant for the lot, but that he refused to accept the same or pay for the lot according to his agreement, and thereby waived and dispensed with the tender of any deed according to the agreement; and that he pretended and alleged that under the will, Emily A. Williams did not take a fee simple, but only an estate for life. Whereas they charged that she was absolutely seised in fee of the premises, subject to the interest of the widow, and of any child or children which might thereafter be born to the said Emily A. Williams.

The other three daughters of testator married as follows: Margaret C., to James P. Bruner, who had six children living, all in their minority, and for whom their father James P. Bruner was appointed guardian *ad litem ;* Elizabeth L., to Mark Devine, and

[Williams and Wife v. Leech et al.]

who had no children; and Caroline Smith, married in June, 1854, to Henry J. Smaltz. These parties named were made defendants in the bill, together with Mary E. Naglee, widow of testator.

They prayed that it might be decreed, that Emily A. Williams was seised of an indefeasible title in fee simple, subject to the interest of the widow for life, and the right and interest of any after-born child or children of the said Emily A.: and also for a decree of specific performance against Charles Leech, according to the contract.

The answer of Leech admitted the contract, and averred that he was always ready and willing to perform the contract on his part; but denied that the complainants could make and convey to him a good and sufficient title in fee simple to the premises, subject to the exceptions mentioned in the agreement.

Bruner and wife demurred to the bill of complaint, and denied that the complainants had by their bill shown such a case as entitled them in a court of equity to any discovery from, or relief against them or either of them.

The other defendants answered, admitting the facts in relation to the will, but alleged that they knew nothing of the contract with Leech; and, desiring not to be litigants in the case, submit all matters of law arising thereon to the determination of the court.

The case came on for hearing on the bill, answers, and demurrer. The judge presiding at Nisi Prius dismissed the bill; and from this decree the complainants appealed.

St. G. T. Campbell and E. K. Price, for complainants.—Two questions arise:—Have the complainants such title to convey to Leech as they contracted for? Are the proper parties joined? It is submitted the will gave to Emily an estate for life, with alternative contingent remainders in fee, first, to her children, or, second, if she had no children, then to her surviving sisters; and that, on the birth of her children, the remainder in fee vested in them, and, upon their decease, it descended to their mother, under sections 3 and 9 of the Intestate Act of 1833. It is an inflexible rule that no limitation shall be deemed an executory devise, if it may be sustained as a contingent remainder: Stehman v. Stehman, 1 Watts 475; 11 Harris 33; Amelia Smith's Appeal, 11 Id. 11; 6 Crui. 444; 4 Johns. R. 65.

The remainder to the children of the daughters was necessarily contingent, because limited to persons not then in being. It was given to the unborn children and their heirs. This remainder vested as soon as the persons to whom it was limited came into being. There is no limitation to the surviving sisters after the determination of the fee once vested: Goodright v. Dunham, Doug.

[Williams and Wife v. Leech *et al.*]

*Rep.* 264; Doe v. Perryn, 3 *T. R.* 484; 2 *Jarman on Wills* 268–372; Rewalt v. Ulrich, 11 *Harris* 390; Parkman v. Bowden, 1 *Sumn.* 367; Wager v. Wager, 1 *S. & R.* 377; Sisson v. Seabury, 1 *Sumn.* 235; 5 *Paige* 321–466; Macombe v. Miller, 9 *Id.* 265; 26 *Wend.* 229.

The only other view that can be taken of this will is that the second limitation over is of a fee in substitution of the previous fee, not within lives in being and twenty-one years, but whenever the issue of the daughter shall fail. That is too remote and void. There is nothing to confine the period here to lives in being, as in Pells v. Brown, *Cro. J.* 590; Eichelberger v. Barnitz, 9 *Watts* 450; Langley v. Heald, 7 *W. & S.* 98; 9 *East* 385; 12 *Id.* 253. It is the general failure of issue at any time occurring, however remote, which is contrary to the rule against perpetuities and void: 4 *Kent* 273; 7 *W. & S.* 98; 9 *Paige* 265; 26 *Wend.* 229; Doe v. Duesberry, 8 *M. & W.* 514; 8 *Harris* 509.

Nor does the limitation over to survivors restrict the time to lives in being—but "survivors" means "others:" *Powell on Devises* 590; 2 *Jarman on Wills* 609–735; 4 *Kent* 279, note. The rule is adopted here that "survivors" means "others," and is the sound rule: Lapsley v. Lapsley, 9 *S. & R.* 131; 2 *Denio* 664. The will thus construed stands with the second limitation stricken out—to Mrs. Williams for life—remainder to children in fee, without further limitation over, and the fee indefeasible in her children, she has by our statute inherited from the survivor of them, and can convey an estate in fee in compliance with the contract.

Are the persons demurring properly made parties to this suit? The rights of all who may be affected by the decision are to be guarded: *Story's Eq. Pl.*, § 72–224; *Jeremy's Eq.* pl. 180–189.

*H. Wharton*, for Bruner and wife, and their children, contended that in this proceeding, to enforce specific performance against Leech, their rights and interests could not be drawn in question. The children being minors, no conclusive decree could be made against them by the court: *Seton on Decrees* 267; Eyre v. Countess of Salisbury, 2 *P. Wms.* 120; Wood v. White, 4 *Mylne & Cr.* 460.

That on a bill for specific performance no one not a party to the agreement can be made a defendant without his consent: Mole v. Smith, *Jacobs* 240; Tasker v. Small, 3 *Mylne & Cr.* 68; 4 *Id.* 460; Robertson v. The Great Western Railroad, 10 *Sim.* 314; *Batten on Con.* (68 *Law Lib.*) 324; *Story's Eq. Pl.*, § 161.

*G. W. Thorn*, for Leech.

The opinion of the court was delivered by

LOWRIE, J.—The old rule of interpretation of wills, right in its

origin, but wrong in its endurance, after the reason of it had passed away, has been repealed by our statute of wills, 1833. And now we must take care that we do not allow any of the inferences and consequences of the old rule to control us in the business of interpretation under the new one.

Now a devise of land is an express gift of an absolute estate, unless a contrary intent be made to appear. And by another rule, a limitation of the estate after the death of the devisee, is unavailable as an expression of a contrary intent, unless when it is manifested in favour of a reversion to the heirs of the devisor, or of a remainder to others than the heirs of the devisee: 19 State R. 41, 369; 23 Id. 29. Mere limitations of power over an estate that is absolute, amount to nothing: W. Blackstone's R. 672, 698, 700.

This will comes under the Act of 1833, and it gives to the testator's daughter, Mrs. Williams, an absolute estate in this land, by the devising clause, and the only question—does the clause afterwards inserted, which declares that she shall not sell the land, but merely receive the income of it during her life, and leave it to be equally divided among her children, and their heirs; or, in default of issue, among the survivors of the testator's children—does this clause reduce the estate to a life estate?

To us it seems to be merely the very commonly manifested purpose to restrain children in their use of their land, being rather a paternal than a legal restraint. The limitations over are not inconsistent with a fee, as it seems to us, for they are limitations to the heirs of the devisee, first to the lineal heirs, and second to the collateral heirs, that is, all together, to her heirs general. But the cause is presented on another ground, assuming that there is a life estate in Mrs. Williams, with remainder to her children. Then, following the usual form of such devises, this one may be stated thus: A devise to Emily for life, with remainder to her issue and their heirs, in equal shares (she being then unmarried); and if she dies without issue, then over to her surviving sisters (who would be her collateral heirs). Of course, the remainder to the children was contingent, until at least one of them was born. But then it became immediately vested, and for this the counsel have cited many cases, and there are numerous others.

In Minnig v. Batdorff, 5 State Rep. 503, it was decided that a devise to A. for life (in 1793), remainder to his children in fee, vests in the children then born, and opens to let in others born afterwards, during the life estate; and therein Mr. Justice BELL refers to and adopts Mr. Jarman's exposition of the law in 2 Pow. on Dev. 215, 303, which is full to the point. And when it once becomes vested in the children, it is transmissible as theirs, and this is clearly expressed in many of the cases, and it is plain

[Williams and Wife *v.* Leech *et al.*]

enough without this: 8 *Barn. & C.* 235; 5 *Id.* 866; 7 *East* 521; 30 *Eng. Rep.* 267; 20 *Id.* 72; *Smith's Executory Int.* §§ 702–5.

The devise over is to take effect only in case the first remainder should not: *Doug.* 326; 2 *Russ. & M.* 416. If the first remainder once vests, it must in this case vest in fee, and descend as such, for there is nothing to divest it in favour of another estate.

The case where the children's title is really contingent, on their surviving their parent, " if they be living at his death," are only confirmatory of these views: 16 *East* 406–7; 6 *R.* 512; 3 *S. & R.* 435.

It may be thought unreasonable, that the devise over should be defeated by the birth of children who may have died within a few months; but we are only following the testator's law of descent, and not making one. Besides, it is quite as reasonable that the mother should succeed in title to her children, as that their aunts should. And these children might have lived to have grand-children, and then died before their mother, and thus nothing would have gone to their descendants, if the vesting of the remainder depended upon the children's surviving the life estate. And to make the vesting depend upon the surviving, would be just as uncertain at the other extreme, for the mother might die a day before, or a day after even her infant children.

This land vested in the children, on their birth, and descended on their death to their parent, but subject to open again to let in the right of other children, when born, for their shares; and the devise over fell entirely, never to rise again.

There may be, however, a difficulty in adopting this view, on another ground; we have suggested in a late case, Price *v.* Taylor, that since the Act of 1833 of wills and descents, an estate tail general may descend according to our own law of lineal descents. If this be so, a devise to children to take distributively, is a valid definition of lineal descent, and therefore of entailment. Then the rule would apply that an estate granted to one for life with remainder to his lineal heirs, is an estate tail; the superadded words " and their heirs" go for nothing. They were necessary under the English law, when children took by purchase, and not as heirs of the body, else they would have had but a life estate. Here they are heirs of the body when taking equally, and we should have little difficulty in regarding this as an estate tail, were it not that the two limitations are altogether a devise to the general heirs of the first taker. Children being as good a word of lineal descent, is equivalent to issue, and this devise may be put into the very language most usual in creating an estate tail—thus—devise to A. for life, remainder to his issue, and in default of issue over.

We think, however, that the devises over are mere devises to the heirs of the first taker, and that, therefore, Mrs. Williams has a perfect fee simple title. But the parties will, no doubt, think it

[Williams and Wife *v.* Leech *et al.*]

advisable to execute the deed in such a form as to dock the entail, if any exists.

It was very right to let Mr. and Mrs. Bruner have a chance of being heard in the case, and if it was improper to make their children parties, that does not affect the rest of the bill.

> DECREE.—This cause came on for hearing at the late term of the court, at Philadelphia, on an appeal from the decree of the Court of Nisi Prius, and was argued by counsel; and now, on consideration thereof, it is ordered, and decreed, that the said decree be reversed, and, it is now further decreed and declared, that the plaintiff, Mrs. Emily Ann Williams, has such a title to the land described in the bill of complaint, as enables her fully to perform the agreement therein recited, and upon the plaintiff's tendering to the said defendant, Charles Leech, a proper conveyance according to the said agreement (such conveyance to be settled by the master, if the parties differ about the same), the defendant, Charles Leech, to pay unto the plaintiff the sum of two hundred dollars in full consideration thereof.

And the court do not think fit to give costs to either side.