## Hood's Estate

*A. S. Ashbridge, Jr., E. Spencer Miller* and *Byron A. Milnor,* for exceptants.

*George Sterner,* contra.

VAN DUSEN, J., January 17, 1936.—The testator gave a portion of his estate in separate use trust for the benefit of his daughter Mary for life, and upon her death "to pay over, transfer and assign the principal thereof to her issue, and in default thereof to my surviving children and issue in equal shares, per stirpes, as above provided". Mary had issue, two children, who were living at the death of the testator and who died without issue before the death of their mother, the life tenant.

The first question is whether these two persons took vested interests at the death of the testator, or whether their interests were contingent upon surviving to the time of distribution and therefore defeated by their deaths. If the gift in remainder was simply a gift to Mary's issue, then each one of her children would take a vested interest at the death of the testator, subject to open and let in after-born children: Minnig v. Batdorff et al., 5 Pa. 503; Williams et ux. v. Leech et al., 28 Pa. 89; Wetherill's Estate, 214 Pa. 150; Reed's Estate, 16 D. & C. 36, 307 Pa. 482. If any such child should die before the time of distribution, without issue, his interest would pass to his personal representatives: cases cited above. Whether the word "issue" indicates a stirpital distribution so that the issue of a child, if any, would take in his place, if he died before distribution, is a question not before us, as each of Mary's children died without issue.

But there is more than a gift to Mary's issue. There is a gift over in default of issue. In Dagit's Estate, 21 D. & C. 130, there was a gift in remainder to the children of the life tenant (which is equivalent to the gift to issue here) and, in default of children, then to the surviving children of the testator and their issue.

It was held that "where the testator has himself provided a substitutionary gift to those who might otherwise be excluded, there is no necessity for presuming such intention in favor of vesting at his death, for the will itself points to a contingency that is resolved at the death of the life-tenant" (p. 134). The opinion cites Alburger's Estate, 30 Dist. R. 301, Jones' Estate, 7 D. & C. 335, and Woelpper's Appeal, 126 Pa. 562.

We are aware that cases may be found in which the first gift was held to have vested at the death of the testator, although the will contained a substitutionary gift. Examination of the opinions will show no reference to the effect of the substitutionary gift, and we can only suppose that the existence of this principle was not adequately called to the attention of the court. No case

expressly denies the principle, and we adhere to it as we did in Dagit's Estate, supra. As both of Mary's children died before her they take nothing.

The next question is: Who are intended by the expression "my surviving children and issue"? If there were nothing more it would seem that the contingency of survivorship to the time of distribution should be implied among the substituted beneficiaries as well as among the original beneficiaries: See Steinmetz's Estate, 194 Pa. 611. But there are added the words "as above provided". This must mean something; and when we look above for the other reference to surviving children we find it in the general gift of the residuary estate.

This is a gift to the children of the testator equally (Mary's separate use trust being excepted out of her share) and " in case any of my said children should be dead at the time of my decease, then the share or shares of such child or children shall vest in their issue in equal shares respectively, per stirpes, and in default of such issue then in the survivors among my said children or in their issue as the case may be". The testator here expressly directs that the surviving children are to be determined "at the time of my decease", and this applies by his direction to the persons who are to take at the death of Mary. The children who survived the testator were four, Mary, Emma, James and Frederick, and the awards should be to them or their personal representatives if they are dead. The auditing judge treated the word "survivors" (which included a life tenant) as "others". Therefore, excluding Mary, he awarded in three parts to the others. Although Mary was the life tenant, she may nevertheless be one of the remaindermen: Tatham's Estate, 250 Pa. 269; Nass' Estate, 320 Pa. 380.

The exceptions of James D. Hood, executor of the will of Mary Virginia Gigon, are sustained to the extent of awarding to him as executor one fourth of the principal of the fund, and one fourth of the income accrued since

the death of the life tenant, and reducing the shares of the other three distributees accordingly. All other exceptions are dismissed, and as modified, the auditing judge concurring, the adjudication is confirmed absolutely.

Joint exceptions were filed by James D. Hood individually, making a claim to the whole fund on the ground that Mary had an absolute interest, and by James D. Hood as executor of Mary Virginia Gigon, and by Jules Gigon, the father of Mary's issue, making a claim to the whole through them. Nothing more confusing can be imagined than joint exceptions by three persons, each of whom makes a claim inconsistent with the others, with the result that Jules excepts because the estate is not awarded to James, and James as an individual excepts because a share is not awarded to him as the executor of Mary. Joint exceptions do no harm where the exceptants have identical interests, but are absurd where they have antagonistic interests.