(No. 24931.—

MARGARET COLEMAN TOLLEY *et al.* Appellees, *vs.* JEANNETTE CALKINS WILSON *et al.*—(WILLIAM W. WOLF *et al.* Appellants.)

*Opinion filed February 15, 1939—Rehearing denied April 12, 1939.*

CLIFTON J. O'HARRA, and ROSWELL B. O'HARRA, for appellants.

TAFF & PUTMAN, CHIPERFIELD & CHIPERFIELD, and FREDERICK O. MERCER, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree entered by the circuit court of Fulton county construed the last will and testament of Elizabeth Wilson and ordered partition of certain real estate. Seven children, and the heirs-at-law of two other children of the deceased brothers and sisters of the testatrix, prosecute this appeal.

Elizabeth Wilson, a resident of Fulton county, died testate on October 27, 1877. She left surviving as her only heirs-at-law, Samuel Wilson, her husband, who died in 1889, and Charles W. Wilson, their son and only child. Two half-brothers, six brothers and sisters of the whole blood, and children of two deceased brothers were then living. Her last will and testament, executed October 9, 1876, was proved and admitted to record by the county court of Fulton county. By the second section of her will Elizabeth Wilson bequeated all of her personal property to

her son, subject to the rights of her husband, except her money, which she directed the executor of her will to invest for her son's benefit until he attained the age of twenty-five years, when the principal and the accumulated interest should be paid to him. In the event he should be twenty-five years of age or over at the time of testatrix's decease it was further provided that he should have the money forthwith. By the third section she devised and bequeated to her son all of her real estate consisting of six tracts of land in Fulton county, for his life, subject to the rights of her husband and the right of her executor to lease the land in the event the son failed to pay the taxes on it. The fourth section is as follows: "I give devise and bequeath unto the Children of my said Son Charles William Wilson that may be born unto him, and their heirs all of my said Real Estate subject to the life Estate of my said Son and the rights of my said husband; provided that my son's children hereafter to be born if any shall not sell or encumber said real Estate until they shall respectively arrive at the age of twenty-five years."

The fifth section declares: "It is my will that in case my said Son Charles William Wilson shall die without issue then in such case I devise and bequeath all my said real Estate to my brothers and sisters of the whole blood and their heirs share and Share alike the children of a deceased brother or sister of the whole blood taking the Share of their deceased parent. It is also my will that in case my said son shall not survive me & die without issue that my said brothers and sisters and their heirs shall take my personal property as is above provided with regard to my real Estate."

The sixth section provides: "It is my will that my executor in case my said Son after my decease, should at anytime fail to pay the taxes on the said real Estate that in that case it is my Will that my said Executor take possession of said real Estate and rent the same to the best ad-

vantage he can and out of the annual rents to pay said taxes & the remainder to pay over to my said son until such time as my said son shall give good security for the payment of such taxes." The will contained no residuary clause.

Charles W. Wilson, the son to whom the life estate was devised, died on August 28, 1937. He left surviving no child or descendant of any deceased child. A son, Howard, born to him and his first wife, Emma L. Wilson, on February 24, 1887, lived only seven days. A second son, Arthur Roy Wilson, born on March 14, 1888, died on March 29, 1909, intestate, leaving no child or descendant of a child. Emma Wilson, the mother of Howard and Arthur, died testate August 11, 1923, leaving Charles W. Wilson, her husband, and Stella S. Coleman, her sister, as her sole heirs-at-law. By her will, duly admitted to probate, she devised her property, both real and personal, to her husband and her sister, for life, and, subject to the life estates and after payment of $10,000 to Ethel Morrow Parnell, she devised her property to Margaret Coleman Tolley, her grandniece. In 1926, Charles W. Wilson married Jeannette Calkins and they lived together until his death. By his will, probated in Fulton county, he devised his property, after specific charitable bequests, to his second wife, Jeanette C. Wilson, and appointed her executrix. Although none of the brothers and sisters of Elizabeth Wilson were living when her son died in 1937, ten children of five deceased brothers and sisters did survive him.

The plaintiffs, Stella Coleman and her daughter, Margaret Coleman Tolley, as devisees of Emma L. Wilson, the first wife of Charles W. Wilson, filed an amended complaint in the circuit court of Fulton county claiming a one-half interest in the land and sought partition between themselves and Jeannette C. Wilson, the second wife of Charles W. Wilson, who claims the other half. Jeannette C. Wilson, individually and as executrix, Ethel Morrow Parnell, and the lineal descendants of the eight brothers and sisters of

the whole blood of Elizabeth Wilson, were made defendants. Eight of the ten children of the brothers and sisters of the whole blood of Elizabeth Wilson living at the time of Charles W. Wilson's death, and the son of another, answered and filed a counter-claim. By their counter-claim they alleged that upon the death of Charles W. Wilson, the life tenant, he having left him surviving no child or children, the fee simple title to the real estate vested in the living children of the deceased brothers and sisters of the whole blood of the testatrix, Elizabeth Wilson—namely, the counter-claimants and Charles B. Coleman, one of the defendants—to the exclusion of succeeding generations of the descendants of the deceased brothers and sisters. Partition was sought according to the respective interests of the counter-claimants and the defendant Charles B. Coleman. The legatees and devisees under the will of Emma L. Wilson, the devisees under the will of Charles W. Wilson, and the executrix of his will, and all the living descendants of deceased brothers and sisters of the whole blood of Elizabeth Wilson, other than the counter-claimants, were made defendants to the counter-claim. Motions to strike the counter-claim were made by the plaintiffs and by Jeannette C. Wilson. Remote lineal descendants of deceased brothers and sisters of Elizabeth Wilson, having made no appearance in the case, were defaulted, and the cause was referred to the master in chancery who recommended that a decree be entered in conformity with the prayer of the complaint, as amended. Objections to the master's report were overruled and ordered to stand as exceptions. The chancellor overruled the exceptions, sustained the motions to strike the counter-claim and entered a decree of partition in conformity with the report.

The decree construed the words "that in case my said son Charles William Wilson shall die without issue," in the first sentence of the fifth section of the will in question, to mean, "that in case my said son, Charles William Wilson,

shall die without having had issue," and found that upon the birth of Howard Wilson, the first child of the life tenant, the infant became seized of an estate of inheritance in fee simple of all the land, subject, however, to the life estate of his father and also to be opened up to let in after-born children, and upon the death of Howard his parents each became seized of an undivided one-half interest in the real estate by inheritance from their first son, subject to the life estate of Charles W. Wilson and also subject to be opened up in case of the birth of other children; that upon the birth of the second son, Arthur Roy Wilson, he, in turn, became seized of an estate of inheritance in fee simple of all the real estate, subject, however, to the life estate of his father, and that upon his death each of his parents again became seized of an undivided one-half interest in the land in fee simple by inheritance from him, subject to the life estate of Charles W. Wilson; that the undivided one-half interest of the latter passed to his widow, Jeannette C. Wilson, by his will, and that the other one-half interest, owned by Emma L. Wilson, passed under her will to Margaret Coleman Tolley, subject to the life estates of Charles W. Wilson and Stella S. Coleman. The decree ordered partition, accordingly, between Jeannette C. Wilson, as the owner of an undivided one-half of the land, and Margaret Coleman Tolley, as the owner of the other undivided one-half, her interest being subject, however, to the life estate of Stella S. Coleman therein, and to the charge of the legacy of $10,000, in Emma L. Wilson's will, to Ethel Morrow Parnell.

The eleven counter-claimants, appellants here, are William W. Wolf and six other children of deceased brothers and sisters of the whole blood of Elizabeth Wilson, a son of a child of a deceased brother, and the widow and two children of a child of another deceased brother who died after the commencement of this proceeding. The defendant Charles B. Coleman is the only other child of a de-

ceased brother or sister of the whole blood of Elizabeth Wilson. The plaintiffs, Stella S. Coleman and her daughter, Margaret Coleman Tolley, and the defendants, Jeannette C. Wilson, individually and as executrix of her husband's will, and Ethel Morrow Parnell, are the appellees.

The decisive issue made by the pleadings and argued on this appeal is whether the words "die without issue" in the fifth section of Elizabeth Wilson's will mean, as contended by appellants, die without issue surviving the life tenant or die without ever having had issue, as appellees insist. The words, "die without issue," when used in wills giving a limitation over in case the first taker shall "die without issue," have no technical, judicial meaning, and the question whether such words shall be construed to mean die without having had issue or without leaving surviving issue, depends upon the intention of the testator as gathered from the entire will. (*Cole* v. *Cole,* 292 Ill. 154; *Blakeley* v. *Mansfield,* 274 id. 133; *Stafford* v. *Read,* 244 id. 138.) Unless there be a contrary intention shown in the will the words "die without issue," this court has frequently announced, are to be construed as meaning "die without having had issue." (*Clark* v. *Leavitt,* 330 Ill. 350; *Noth* v. *Noth,* 292 id. 536; *Kendall* v. *Taylor,* 245 id. 617; *Stafford* v. *Read, supra.*) In the absence of explicit contexts controlling the meaning of the word "without" two distinctions require consideration. If there is no independent gift to the children of the first taker, "without," means primarily "without children surviving" the first taker. Conversely, when there is an independent gift to the first taker's children or issue, so that a child upon birth acquires a vested interest, "without" may mean "without ever having had." (Kales, Estates and Future Interests, (2d ed.) secs. 539, 540, 543.) "Thus," it is said, "if the gift to the first taker is for life and there is an express gift to the children of the life tenant which is vested at once on their birth, or on their reaching twenty-one, or other age or event, the English

cases hold that a gift over if the first taker die 'without leaving' children or issue, means 'without having had' *such* children or issue as have taken a vested interest. This prevents the divesting of an interest once vested in a child. In the case, therefore, where the children take vested interests at birth, the phrase 'die without leaving' children or issue will mean 'die without ever having had' children or issue, as the case may be." (Kales, *supra,* sec. 540.) Where there is an independent gift to the·first taker's children contingent upon their surviving the first taker, a gift over if the first taker "die without children" means die without children surviving the first taker. (Kales, *supra,* sec. 541; *Blakeley* v. *Mansfield, supra.*) In the present case, however, it will be seen from the fourth section of the will that there was, independent of other provisions, a direct gift or devise to the children of testatrix's son when and if born.

Conceding, as appellants insist, that where the general context of a will discloses an intention that the expression "die without issue" in gifts over if the first taker dies without issue, means definite failure of issue, namely, the death of the first taker without issue surviving him, the testator's intention will be enforced, (*Cole* v. *Cole, supra; Blakeley* v. *Mansfield, supra; Gannon* v. *Peterson,* 193 Ill. 372; *Johnson* v. *Askey,* 190 id. 58; *Strain* v. *Sweeny,* 163 id. 603;) the concession does not aid them unless the will discloses a clearly expressed intention for the words in question to mean die without issue surviving the first taker. The dominant plan of the testatrix, reflected in her will, is an intense desire to keep her property, real and personal, in her immediate family, and, in particular, to give her real estate to her own descendants, to the exclusion of her brothers and sisters and their descendants, in the event of the birth of a child or children to her son. Only if her son did not have a child did she intend the real estate to go to the collateral relatives. By the second section of her will the testatrix postponed the payment to her son of her

money, as to which she created a trust if she died before he became twenty-five years old. The remainder of her personal property vested absolutely in him at her death. Next, she gave him a life estate in all her property, subject to the rights of her husband and to the right of her executor to lease the land in the event he, the son, should fail to pay the taxes. By the fourth section of her will the testatrix made a direct devise of the land to the children of her son, Charles W. Wilson, to be born, and their heirs, subject to the life estate, but attached a restraint on alienation until the unborn children should become twenty-five years of age. Although the restraint on alienation is void (Kales, *supra,* sec. 727; *Noth* v. *Noth, supra; Askins* v. *Merritt,* 254 Ill. 92;) it indicates that the testatrix contemplated her son's children would have the power to sell or encumber the real estate after they attained the age of twenty-five years, irrespective of whether they survived their father, the life tenant. To keep the property within her family if her son should die without issue Elizabeth Wilson, by the fifth section of her will, provided a gift over to "my brothers and sisters of the whole blood and their heirs share and share alike, the children of a deceased brother or sister of the whole blood taking the share of their deceased parent." By the quoted provision testatrix merely provided for a *per stirpes* devolution if one of her brothers or sisters of the whole blood should die. It does not operate, however, to exclude heirs generally from taking, and does not purport to limit the word "heirs" to the children of such a brother or sister. By the last sentence of the fifth section she provided: "It is also my will that in case my said son shall not survive me and die without issue that my said brothers and sisters and their heirs shall take my personal property as is above provided with regard to my real estate." It will be observed that the words "shall not survive me" refer only to testatrix's son surviving her and not to his issue failing to survive either of them. In short, the collateral

relatives take the personal property only if the son does not survive her and dies without issue. Having had issue, one of the concurrent conditions upon which the collaterals would take, the whole clause became inoperative. The provision of the sixth section, with respect to the life tenant paying the taxes, means simply that the testatrix did not intend her son to lose the land or her devisees to lose it through tax sales. A consideration of the whole will of Elizabeth Wilson fails to disclose language, express or implied, from which it might be legitimately inferred that the testatrix intended the words "die without issue" to mean without issue him surviving. Her manifest intent was to give her only child and son a life estate, to devise the fee to his unborn children which should vest in them and their heirs upon birth, and, in the alternative, if the life tenant should die without ever having had children, the fee to go to her brothers and sisters of the whole blood and their heirs.

The word "then" in the first part of the fifth section of the will is scrutinized by both the appellants and appellees. The fifth section commences: "It is my will that in case my Son Charles William Wilson shall die without issue then in such case I devise and bequeath." It will be observed that the word "then" is preceded by the words "in case" and is immediately followed by the phrase "in such case." Appellants contend that the word "then" is employed as an adverb of time meaning "at that time," namely, at the time of death of Charles W. Wilson, and, in connection with the words "die without issue," necessarily refers those words to the time of the life tenant's death. On the other hand, appellees maintain that the word "then," used in connection with a devise, is usually employed as a reference to an event rather than as an adverb of time. Appellants rely upon *Strain* v. *Sweeny, supra*. There, the first section of the will of Joseph Sweeny devised certain land to his son, Dennis, and his heirs forever, and provided further: "But in case he should die without issue of his

body, then the same shall go to the heirs of Nelson C. Sweeny, to them and their use forever." The court pointed out that when the word "then" is employed as a word or "particle" of reference it means "in that event," "in that case" or "in consequence," and generally follows a clause beginning with the word "if." Construing the quoted provision of Joseph Sweeny's will, the word "then" was accordingly held to be an adverb of time meaning "at that time" for the reason that the clause preceding it began with the words "in case," and, the court said: "to construe it as meaning 'in that case' would be a mere repetition of the same expression." In *People* v. *Camp*, 286 Ill. 511, cited by appellees, this court held that the words "then and in such case," used in connection with a devise over to the heirs-at-law of a testatrix, do not point to the time when the right of the beneficiaries to take begins but ordinarily refer to the event upon the happening of which the heirs-at-law take the property. To the same effect is *Himmell* v. *Himmell*, 294 Ill. 557, where a testatrix devised a life estate to her son and only child, providing further that if the life tenant die without leaving issue surviving him, "then it is my will that such real estate revert and go to my heirs as if no will had been made." The word "then" was held not to indicate the time ascertaining the heirs-at-law of the testatrix. The quoted language of section 5 of Elizabeth Wilson's will does contain a repetition of the same expression. We are of the opinion, however, that the appellants seek to ascribe undue efficacy to the word "then" and that the construction urged by them is unwarranted. It is just as probable that the phrase "then in such case" refers to the event and merely emphasizes the preceding words "in case my said son Charles William Wilson shall die without issue" as that it was employed as an adverb of time. Manifectly, the solitary word "then" in section 5 was not intended to destroy the express devise in section 4 to "the

children of my said son, Charles William Wilson that may be born unto him, and their heirs."

The phrase "die without issue" occurs once in each of the two sentences of the fifth section of the will. The first sentence provides that in case the life tenant dies without issue then her real estate shall go to her brothers and sisters and their heirs. The succeeding sentence declares it to be the will of the testatrix that in the event her son predeceases her without issue her brothers and sisters and their heirs are to take her personal property in the same manner as is provided with respect to the land. Appellants claim that the provision in the second sentence discloses an attempt by the testatrix to provide against an intestacy as to her personal property if her son should not survive her, and to prevent a lapse of the bequest of the personalty which she made to him in the second section of the will. Irrespective of whether the words "die without issue," in the substitutionary gift of personalty to the brothers and sisters, are construed to mean "die without issue surviving" or "die without having had issue" an intestacy may result. The gift of personalty is to the son, and in the event he shall not survive the testatrix *and* "die without issue," her brothers and sisters shall take. If "die without issue" be construed to mean "die without having had issue" an intestacy of the personalty would result if the son had a child during the lifetime of the testatrix and, thereafter, the grandchild, the son, and the testatrix died in succession. In such case there would be an intestacy as to the personalty because the gift to the son has lapsed and the brothers and sisters cannot take as the condition upon which their gift was limited has not occurred, namely, they were to take only if the son should die without having had issue, but he has had issue. On the other hand, if it be assumed, as appellants contend, that "die without issue" means "die without issue surviving" an intestacy of the personalty is also

possible. A situation suggests itself where the son has a child during the testatrix's lifetime, and thereafter the son dies, the child dies without having had children, and, finally, the testatrix dies. The gift to the son has lapsed and the child cannot take under the lapse statute since he died before the testatrix. Nor could the brothers and sisters take since the contingency upon which their gift was limited has not occurred, namely, they were to take only if the son died without leaving issue surviving him, but he did have issue survive him. Appellants' argument that the construction urged by them would avoid an intestacy as to the personal property is fallacious. The words "without issue" in both of the sentences of the fifth section mean without ever having had issue.

Appellants' argument that the intent expressed in testatrix's will is that her land should not pass into the hands of persons unrelated to her upon the death of her son is not persuasive. In *Williams* v. *Leech,* 28 Pa. 89, analogous to the case at bar, there was a devise to the testator's daughters for life, with remainder to their children and their heirs followed by the proviso that "if either of my children should die without issue, their portion shall be equally divided among the survivors." Holding that the remainder vested in the children's offspring as soon as born, the court observed: "It may be thought unreasonable, that the devise over should be defeated by the birth of children who may have died within a few months; but we are only following the testator's law of descent, and not making one. Besides, it is quite as reasonable that the mother should succeed in title to her children, as that their aunts should. And these children might have lived to have grandchildren, and then died before their mother, and thus nothing would have gone to their descendants, if the vesting of the remainder depended upon the children's surviving the life estate. And to make the vesting depend upon the surviving, would be just as uncertain at the other extreme, for the mother might

die a day before, or a day after even her infant children. This land vested in the children, on their birth, and descended on their death to their parent, but subject to open again to let in the right of other children, when born, for their shares; and the devise over fell entirely, never to rise again." The foregoing language is singularly applicable here.

The decree of the circuit court is right, and it is affirmed.

*Decree affirmed.*