Russell Handy, Plaintiff-Appellee, v. Sue T. Shearer, et al., Individually and as Executor of the Estate of Lowney T. Handy, Deceased, Vivian T. McClellan, Individually and as Conservator of the Estate of Faye T. Swain, an Incompetent, Faye T. Swain, an Incompetent, Wayne A. Turner, Earl J. Turner, The Handy Colony, an Illinois Corporation Not For Profit, James Jones, The City of Marshall, Illinois, Earl Kile and Doris Kile, Defendants.

Sue T. Shearer, et al., Individually and as Executor of the Estate of Lowney T. Handy, Deceased, Vivian T. McClellan, Individually and as Conservator of the Estate of Faye T. Swain, an Incompetent, and Wayne A. Turner, Defendants-Appellants.

Gen. No. 10,834.

Fourth District.

April 10, 1967.

Massey, Anderson, Gibson and Pearman, of Paris (Robert L. Gibson, of counsel), and Sidney J. Wolf, of Chicago, for appellants.

John M. Hollenbeck, of Marshall, for appellee.

SMITH, J.

This suit involves the construction of the second paragraph of the will of Sol Handy, deceased. It reads as follows:

> "SECOND—I give and bequeath to my wife, Loudell Handy, all my property, real, personal and mixed, for and during her natural life or widowhood, and at her remarriage or death, to my son, Harry Edwin Handy. In the event of the death of my son, Harry Edwin Handy, before the remarriage or death of my wife, Loudell Handy, then it is my will that, at the remarriage or death of my wife, Loudell Handy, all my property, real, personal and mixed, shall descend to my legal heirs."

The trial court held that the term "legal heirs" referred to heirs determined as of the death of the life tenant and found for the plaintiff, a nephew of the decedent. Defendants contend that "legal heirs" refers to heirs determined as of the death of the testator and claim through such heirs.

 Sol Handy executed his will on May 23, 1923, and died on May 3, 1934, leaving his widow, Loudell, and his son, Harry Edwin, surviving. Harry died on March 29, 1963. Loudell died July 20, 1964, without remarrying. The sole issue is whether the term "legal heirs" refers to heirs living at the death of the testator or heirs living at the termination of the life estate. Ordinarily the words "heirs," "heirs-at-law" or "legal heirs" are used to designate those persons who have that status at the death of the testator unless the inten-

tion of the testator to refer to those who would have been his heirs had he died at a subsequent time is clearly manifest by the language used in the will. Robertson v. Eastern Long Island Hospital, 28 Ill2d 483, 192 NE2d 895. It is no answer to our problem to say that the testator might have resolved the matter by the use of appropriate specific language. We do not determine what the testator meant to say but what he did mean by what he did say. Hull v. Adams, 399 Ill 347, 77 NE2d 706. We cannot search for an intention that the testator may have had in mind but failed to express with appropriate recognized language.

The controversy centers on the second sentence of the quoted portion of the will which provides for a gift over to "my legal heirs" upon the death of Harry prior to the death or remarriage of the widow. In both the first and second sentences the testator used the words "*at* the death or remarriage". In the second sentence he refers twice to the death or remarriage of his widow. The first time he couples it with the words "in *event* of" and the second time with the words "then . . . *at* the remarriage or death of." While the words "in event of" have been construed to mean "at their death" where the context requires it, Griffin v. Griffin, 29 Ill2d 354, 194 NE2d 641, the use of both terms in the same sentence suggests that the testator intentionally used each term in a context different from the other. It thus becomes important to determine whether the word "then" is a word of reference to the preceding event, i. e., the death of Harry or an adverb of time referring to the death or remarriage of the widow. It can be used in either manner. Tolley v. Wilson, 371 Ill 124, 20 NE2d 68; Phelps v. Seeley, 3 Ill2d 210, 119 NE2d 923. In our judgment, it is here used as an adverb of reference. It seems to us the testator is saying that upon the happening of a specified event (the death of Harry) before the specified time (the death or remarriage of the widow) there is a gift over

to my legal heirs determined as of the specified time. Twice using the language "at the death or remarriage" clearly suggests that the subsequent gifts either to Harry or in the alternative "to my legal heirs" means that the devolution of the property to the alternative remaindermen is determined and fixed at the time of the remarriage or death of the widow.

In the first sentence the testator clearly confined the interest of the widow to her widowhood and unequivocally closed the door to any interest of a second husband in his property by inheritance or otherwise. In the same sentence he took care of Harry if he survived the widow or her widowhood. Harry had no children either at the death of the testator or at the death of the life tenant. Had the will ended at this point and had Harry died before the termination of widowhood, the remainder would have descended to testator's heirs as intestate property. There would be no occasion for the second sentence had this been his plan. The death or remarriage of the widow is mentioned three times in two sentences. Both are determinative events, one bound to happen and one could happen. Its threefold use suggests that it was an event and a point of time that weighed heavily in the testator's plan and in his thinking. It was only then that it could be determined whether Harry was to receive the property or not and whether or not a substitutionary gift was necessary. To construe the term "my legal heirs" as referring to those occupying that status on the date of the testator's death would exclude after-born grandchildren. This is not the natural thing to do. There is nothing that suggests this was his intention. By using the date of the widow's remarriage or death as a date for the determination of "my legal heirs," testator's plan is complete. He has provided for the natural devolution of his property to his own bloodlines and if extinct then in the alternative to his collateral heirs.

■ The testator is presented to us in this record as a layman of considerable expertise in the use of the English language and in his ability to express himself with precision. While this litigation may tend to disparage such a characterization, we think it is clear that he meant what he said and said what he meant. The decree of the trial court is affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.