(No. 31524.—

ELIZABETH McGLOTHLIN *et al.*, Appellees, *vs.* RUTH McELVAIN *et al.*, Appellants.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

WILLIAM G. PEACOCK, of Morris, for appellants.

MURPHY & MURPHY, and HEMPHILL & KELSEY, both of Carlinville, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Macoupin County, partitioning certain real estate which passed under the will of Jonathan Plowman, who died February 19, 1900, leaving surviving him seven children, and leaving a certain last will and testament which was admitted to probate.

The case concerns property which was devised to his daughter Rachel Plowman by the sixth and ninth paragraphs of his will. By the sixth paragraph of the will it was provided:

"SIXTH: I give and bequeath to my daughter Rachel Plowman, the east half of the northeast quarter, and the northeast quarter of the southeast quarter, all in Section two (2), Township twelve (12), North, Range Seven (7) West of the third Principal Meridian, in Macoupin County, Illinois.

and the ninth paragraph of the will reads as follows:

"NINTH: I give, devise and bequeath to my daughters, Mary E. and Rachel Plowman, my homestead in Virden, described as follows, to-wit: Lots eight (8), nine (9) and twelve (12), also Lots one (1), four (4), and five (5) all in block forty-three (43), in Hickox and Others Addition to the Town (now City,) of Virden, also Out Lot "H" in said addition to the City of Virden, all being in the County of Macoupin and State of Illinois, also all of my personal estate of every kind which my said daughters are to take without appraisement."

The controversy concerns the construction of the eleventh paragraph of the will, which provided:

"ELEVENTH: In the event of the death of any of my said children, without leaving them surviving lawful issue, I direct that the portion devised to such child be distributed share and share alike among my said children then surviving."

Of the seven children of Jonathan Plowman, Emily Cheney died January 17, 1917, leaving surviving issue; Mary E. Plowman died August 19, 1920, leaving no issue. She was survived by five of her brothers and sisters, *viz.*, Adoniram J. Plowman, who died August 9, 1921, without issue; Charles Plowman, who died January 13, 1927, leaving issue; Edward Plowman, who died January 14, 1931, leaving issue; Hattie Cooper, who died July 6, 1931, leaving issue; and Rachel Plowman, who died without issue on January 14, 1948. It is to be noted that Rachel Plowman,

who died without issue, was not survived by any of the other children of the testator.

It is the contention of the plaintiffs-appellees that, upon the death of Rachel without issue, her interest was divested by operation of paragraph 11 of the will, and that such interest then became vested in such persons as were the heirs-at-law of Jonathan Plowman, determined as of the date of Rachel's death.

The defendants-appellants contend that paragraph 11 does not operate to divest the fee-simple estate devised by paragraphs 6 and 9 to Rachel, for the reason that Rachel had no brothers and sisters surviving at the time of her death, and that the will and the eleventh paragraph must be read as a whole, and that the testator's intent was to divest the estate devised to Rachel only in the event she died without lawful issue surviving her, and was survived by other children of the testator.

The lodestar of will construction is to ascertain the intention of the testator. When the intention is ascertained it will be given effect by the court if it is lawful, is not against public policy, and not contrary to words having a fixed or technical meaning. (*Lawson* v. *Illinois Merchants Trust Co.* 337 Ill. 49.) To ascertain this intention the entire will must be examined so each clause may be given effect, and in ascertaining this intention certain elementary rules applying to testamentary disposition must be observed, among which are: (a) the language construed must be found within the four corners of the instrument (*Halderman* v. *Halderman,* 342 Ill. 550;) (b) a construction should be given avoiding intestacy of the whole or any part of the property, if possible, (*Hartwick* v. *Heberling,* 364 Ill. 523;) (c) give the language used its ordinary common meaning, unless other language manifests that it be used in a special or limited sense, (*Carlin* v. *Helm,* 331 Ill. 213; *McClure* v. *McClure,* 319 Ill. 271;) (d) render a construction that will vest the whole title in the earliest

taker, the first if possible, (*Bradsby* v. *Wallace*, 202 Ill. 239; *McFarland* v. *McFarland*, 177 Ill. 208; *Davis* v. *Ripley*, 194 Ill. 399.) And even technical rules will not be permitted to defeat the intention of the testator when not in violation of law. *Lawson* v. *Illinois Merchants Trust Co.* 337 Ill. 49.

Having regard for such rules of construction, we observe that by the sixth paragraph of the will of Jonathan Plowman there was a plain devise to Rachel Plowman of one hundred twenty acres by the use of the words "I give and bequeath." Were the same language used in a deed, transposing the words "convey and warrant" for those of "give and bequeath," a fee-simple title would result under the statute of Illinois. (Ill. Rev. Stat. 1949, chap. 30, par. 8.) The same result would apply to paragraph 9, devising the homestead, except that Rachel was given a half interest only therein, with her sister Mary E. Plowman. There was likewise no residuary clause, and there was no property of the testator that was not disposed of by the will.

Jonathan Plowman had seven children at the date of his will, October 5, 1895, and at the date of his death on February 19, 1900, each of whom was devised a certain parcel of land on the same terms as that given Rachel in the sixth paragraph of the will, and each of the seven children were included in the eleventh paragraph, making the provision that in case of any child dying without leaving surviving lawful issue the portion devised to such child should be distributed among the children then surviving, share and share alike. The word "then" can refer to no other time than the date of the death of the devisee, and the word "children" refers to the children of the testator, and not to his grandchildren or great grandchildren, because he recognizes that a child may die leaving surviving issue, but he makes the eleventh paragraph apply only to the share of a child dying without lawful issue, and makes no provision for the share so abating being distributed to

"issue," but only to "children then surviving." This language clearly indicates that only children can take such share; and this view is fortified by the well-settled principle that a devise to a child is not construed to mean a grandchild unless a clear intention or necessary implication requires it. *Watterson* v. *Thompson,* 404 Ill. 515, and cases cited.

The testator knew all of his children would die, and ultimately one child would survive the others, and the apparent object of the eleventh paragraph was to terminate the devise to such of his children as died without leaving surviving lawful issue, and was survived by brothers, or sisters, or both. From this it follows that in order for the eleventh paragraph to have effect, the child whose share is involved must (a) die without issue surviving; and (b) have a brother or sister surviving. The actual intent is clear and obvious. If a child died without issue and another child or children of the testator survived, such share of the one so dying without issue was, by executory devise, given over to a surviving child, in which event the last child dying, without surviving issue, would leave no one qualified to take under the literal terms of the will. Such ultimate situation is presented in this case. Rachel died without surviving lawful issue, and was not survived by any brother or sister, children of the testator. Rachel died testate, and disposed of the properties given to her in the will, to appellants.

The circuit court held that the estate of Rachel terminated with her death, and that it descended to the heirs of Jonathan Plowman, computed as of the time of Rachel's death, thus leaving a certain portion of Jonathan Plowman's estate intestate. Counsel for appellees contend the eleventh paragraph of the will limited the fee of Rachel by a requirement that she be survived by lawful issue, and, having none, her share became intestate and descended to the heirs of Jonathan Plowman. On the contrary, appel-

lants claim that the eleventh paragraph of the will created a conditional limitation by reason of such executory devise, and that the events which would divest her of her interest having failed, her fee, which before the death of all of her brothers and sisters had been determinable, now became absolute, subject to her testamentary disposition.

We do not believe that the precise question presented by the facts in this case has ever been directly decided by this court, and therefore its correct disposition must necessarily depend upon principle or analogy derived from decisions of other States, similar, if not precisely in point.

Estates in land range down from a fee simple absolute, which includes every interest therein, a transfer giving to the grantee or devisee all interest as far as duration is concerned. Sometimes an estate is granted or devised which is a fee, subject to being transferred to another person upon the happening or not happening of certain specified events, or one which will exist perpetually unless a certain condition or event occurs, the failure of which leaves the estate absolute in the first instance.

Such estates, so restricted or competent to become absolute, may be designated as estates which may ripen into fee simple, as for illustration: (1) a qualified fee at common law, which was inheritable only by a particular class of heirs, as for instance, to A and his heirs by his present wife; or, (2) a fee conditional, which was restricted to the lineal heirs of some particular class, so that if the grantee had issue born the fee was considered absolute; or, (3) a determinable fee, which was one subject to special limitation which marks the ordinary bounds of an estate, and which will cease on the happening of the event which circumscribes its duration; and (4) a fee subject to a conditional limitation, which, upon the happening of some uncertain event, may be displaced either partially or entirely by another estate which is limited to arise out of, or vest upon the happening of the contingent event, or

which becomes absolute by failure of the event which determines it.

The term "conditional limitation," to be understood, should properly be considered in the light of the original sense in which the term limitation was used. From Preston on Estates (Vol. I) we learn its original meaning, and how different results were produced, depending upon the use of words in the conveyance. Originally at common law the quantity of time comprising an estate arose from limitation, and the time of enjoyment was marked by the express mention of the period to which the estate should extend, or the event beyond which such estate should not continue. (1 Preston on Estates, p. 28.) The expression "words of limitation" is always used in contradistinction to words of purchase. The words were used principally to distinguish the character of interest taken by heirs named in the conveyance, as distinguished from the interest taken or reserved in the ancestor.

Suppose a limitation be made to a man and his heirs,—first, until the marriage of B, or, secondly, until the return of C from Rome; and the death of B happens before his marriage, or the death of C takes place before his return from Rome. By these circumstances it becomes impossible that the event expressed for the determination of the estate should ever arise, and the estate will for that reason continue to all eternity, precisely in the same manner as if the parties had not annexed to the disposition any collateral limitation giving to the estate a determinable quality. 1 Preston on Estates, p. 440.

In the instance of a gift to a man and his heirs until marriage or until he return from Rome, the fee passes by force of the words "heirs," and by reason that the estate is not measured by the life of the person, but by reference to an event which may or may not happen. Omit the word "heirs" and there would be merely an estate of freehold determinable in one instance by death without marriage;

and in the other instance by death without returning from Rome. 1 Preston on Estates, p. 442.

Although in modern times the word "heirs" has not been deemed necessary to create estates in fee simple, or other fees less than a fee simple, still the use of words "limitation" or "conditional limitation" has been applied where fees have been created without the formal word "heirs," the reason doubtless being because the grant to one without the use of the word "heirs" now passes a fee instead of a life estate as at common law.

As above noted, there are but few cases in this country which discuss the particular situation arising here, where Rachel died leaving no surviving issue, and also was not survived by a brother or sister. Challis in his work on Real Estate, pages 181 and 183, says "determinable fees are divisible into two classes, according as the future event which may determine them (1) is an event which admits of becoming impossible to happen; such as the marriage of C.D., which may become impossible by C.D.'s death; or (2) is an event which must forever, if it does not actually happen, remain liable to happen, such as the fall of a particular building. In the former case, if the event has not happened before the death of C.D. the determinable fee is by his death *ipso facto* enlarged into a fee simple. In the latter case the determinable fee can never be enlarged into a fee simple, except by a release of the possibility of reverter."

Tiffany, in his work on Real Property, 2d ed., sec. 175, says: "If an executory limitation fails for any reason to take effect, either because originally invalid, because the objects thereof never came into existence, or for other reasons, the preceding estate will, according to the decisions in this country, continue in the first taker, according to its original limitation, unless a contrary intention on the part of the testator appear."

We have pointed out what we believe was the intention of the testator, Jonathan Plowman. But, it is claimed that if this language creates a limitation upon the estate of Rachel Plowman, or a determinable fee, it would then pass to the heirs of Jonathan Plowman upon the presumed intention of the testator, and such result is demanded even though contrary to the actual intent of the testator.

In *Drummond* v. *Drummond,* 26 N. J. Eq. 234, the property was devised to executors, with directions to divide equally between the wife and a daughter. At the death of the wife the whole fund was to go to the daughter when she arrived at full age. If the daughter should die without issue the fund was to go to his nephew, Philip. The latter died in the lifetime of the testator. The widow also died. The court held the daughter was entitled to the entire fund, and also further said, by way of *dicta,* that if the daughter had died without issue the children of Philip would not have been entitled to anything. The language of the court probably furnishes the best foundation for the rule claimed by appellants, found in any of the American cases. It is as follows: "The gift to Jane was absolute, subject to be defeated by the contingent executory gift over. She was the primary object of his bounty. The provision made in the contingency of her dying without leaving lawful issue, was made expressly for another object of his bounty whom he desired and intended to benefit in that event. That object has ceased to exist, and the provision, therefore, was at an end, and the primary gift was left wholly unaffected by it. * * * The principle of the rule that, where there is an estate in fee liable to be defeated on a condition subsequent, and that condition originally was, or by matter subsequent, has become impossible to be performed, the defeasible estate is made absolute, applies to this case, for the estate was made liable to be defeated by a gift over which could never, by possibility,

take effect, and the primary gift, therefore, is the same as if there were no provision for its defeasance."

In another New Jersey case, that of *Michael* v. *Michin,* 90 N.J.L. 603, 101 Atl. 283, the testator devised real estate to his wife for life, and after her death to his three children, each a distinct parcel, with this proviso: "In case my son, Harry, should die without issue, his share to go to my daughter, Emma." Harry survived the life tenant, and Emma died during the life tenancy, leaving a child. It was held that, Harry having survived the life tenant and the executory devisee, his estate became absolute. The court followed the *Drummond case,* setting out in its opinion the language just above quoted.

In *Jackson* v. *Statts,* 11 Johns 337 (N.Y.,) the residuary clause read: "And the remainder to be equally divided among my living children and if one or more happens to die without heirs, then his or their parts or shares, shall be equally divided among the rest of the children." The last of the children died without issue, and the property was deeded by him during his life-time, and a question arose upon the title thus conveyed. In regard to this clause, the court said: "The testator making the limitation over, never contemplated the case ·which has occurred and when he says if any one or more happen to die without heirs, his or their parts or shares shall be equally divided among the rest of the children, he undoubtedly by the rest of the children refers to his own children, whom he had before named in his will. He did not think of his grandchildren and it would be doing violence to his intentions to say he did;" and thereupon held that, since no one could take under the executory devise, it would become inoperative and could not divest devisee of what he had gained under the will. The case of *Sullivan* v. *Gaersche,* 229 Mo. 496, 129 S.W. 949, recognizes the same principle where, under a similar state of facts, it is said: "if it is a determinable fee liable to cut down on the happening of the event on which

the future estate depends, and that event does not occur, then the fee is not cut down and there is no reversion."

While the precise question has not been decided in this State, it has been said many times that if an executory limitation after an absolute estate fails, the prior interest remains absolute. In other words, if the condition which would divest the estate from the first taker never happens, the first taker's estate becomes a fee. (*Post* v. *Rohrbach,* 142 Ill. 600; *Howe* v. *Hodge,* 152 Ill. 252; *Quinlan* v. *Wickman,* 233 Ill. 39.) In all of these cases the gift over was void as violating the rule against perpetuities.

The cases in Illinois nearest in point are *Parrish* v. *Parrish,* 327 Ill. 279, and *Mills* v. *Teel,* 245 Ill. 483. In the latter case it is held that where a fee is subject to a conditional limitation, the fee is given to the first taker unless the qualifying words manifest a different intention. The facts in this case disclosed that the will devised Marshall E. Teel and other children certain land, and in a later clause it was provided that, if any child died leaving no children, there should be a devise over of such share to the remaining children not so dying. Marshall E. died after his father, leaving no child, but a widow. The other children claimed under such divesting clause. The court held the divesting clause violated the rule against perpetuities, and that the limiting clause having failed Marshall E. took a fee simple, which descended to his heirs.

In the *Parrish case* the will gave John forty acres to hold for fifteen years, but should John die within fifteen years it was to descend to the heirs of his body, share and share alike. After fifteen years from the testator's death John was to receive the fee, but he died before the expiration of such time, leaving no heirs of his body. It was held that the fee which he would have taken was defeasible only upon the condition that he should *die* during the fifteen-year term *leaving* heirs of his body, and that his death alone could not effect such result, and consequently he took a

fee-simple title. In reaching this conclusion the court followed Jarman's statement of the law in such cases, *viz.*, "It is observable that in the greater number of the cited cases the prior interest was created for the benefit of the ulterior devisee; but this circumstance does not seem to vary the principle, for the material fact, and that which constitutes the special characteristic of this class of cases, is, that there is a prior interest extending over the whole period for which the devise in question is postponed. It is therefore, in effect, a devise of the whole estate instanter, * * * with the exception of a partial interest carved out for some (no matter what) purpose."

Appellee relies heavily upon the case of *Gavvin* v. *Carroll*, 276 Ill. 478, but the question now before the court was not there decided. The will involved read: "I will and bequeath to my son John Gavvin [land] * * * and should he die without issue then the property devised to him by this item shall be equally divided among my surviving children at the time of his decease."

At the time of the testator's death there were five children, including John Gavvin, and shortly after the decease of the testator the other children made warranty deeds conveying said land and all their present and future interest therein to John Gavvin. He filed a bill to quiet the title, and then one sister, who was still living, resisted a decree declaring he had acquired a fee simple by virtue of the deeds and the terms of the will. The court held the will created a determinable fee which might endure forever or might be terminated by his death. However, it had no occasion to pass upon what the title would be had all of his brothers and sisters died before he did, because one was still living, and there was also a possibility he would be survived by issue. The language of the will is quite similar to the one before us but the point decided was entirely different. Here there were no surviving children, and in the *Gavvin case* there were. Here the controversy

is between the heirs of testator's children, and in the *Gavvin case* the issue was between the testator's children, and there was still the possibility that John would not be the last survivor of such children, which would be necessary to make the cases parallel. The court guarded against holding the determinable fee could not be enlarged into a fee simple by saying: "It might be otherwise if it had become impossible for the condition to happen upon which the estate was to be enlarged to a fee simple, but the possibility of the condition happening will exist until extinguished by the death of the complainant. [John.]" It must be perceived at once that the time had not yet arrived when the rights of John Gavvin as the last survivor of five children could be or was decided. The result in the present case might have been the same as in the *Gavvin case* if Rachel Plowman had made a similar claim while some of her brother or sisters were still living. The *Gavvin case* has no application to the facts in this case.

There are a number of cases in which the rule is established that, where the first estate is liable to be defeated by a conditional limitation which violates the rule against perpetuities, and the limitation over is invalid for this reason, the first estate becomes a fee absolute, just as though there were no limitation whatever. It is suggested, however, that this principle is limited to where the conditional limitation is void on such ground, but we can see no reason for a distinction between a limitation that is void as against the rule of perpetuities, and one which may become void because of impossibility of happening.

No case has been called to our attention where such a distinction has been mentioned, but on the contrary in *Howe* v. *Hodge,* 152 Ill. 252, and *Quinlan* v. *Wickman,* 233 Ill. 39, the direct statement is made concerning conditional limitations, *viz.,* "When a subsequent condition or limitation over is void, by reason of its being impossible, repugnant or contrary to law, the estate becomes vested

in the first taker, discharged of the condition or limitation over, according to the terms in which it was granted or devised. If for life, it then takes effect as a life estate; if in fee, then as a fee simple absolute."

It seems to us that the true inquiry in this case is whether the failure of the gift over, being a part of the divesting contingency, is to be given the same effect as in those cases in which the divesting contingency terminates by death or through similar causes. We can see no reason why the conditional limitation of the first taker's estate may not be made to depend upon the requirement that a named person survive the first taker, the same as a like limitation that the estate end upon the marriage of A, which becomes impossible because of A's death. This view is supported by *Duryea* v. *Duryea*, 85 Ill. 41; *Leonard* v. *Burr*, 18 N.Y. 96, and *Harrison* v. *Foreman*, 5 Vesay Jr. 207, 31 Eng. Reprint 549.

Professor Simes, in his work on Future Interests, sec. 771, after an analysis of all of the cases, including those above mentioned, says that the prior interest will be divested or not divested on the failure of the succeeding interest, as will more nearly accord with the probable intention of the testator, and concludes with these words: "But, if it is impossible to make any inference as to the testator's intent, then it is believed to be more nearly in accordance with the position of the American courts to say that there is a presumption that the preceding estate is not divested."

We thus see that, while this court has not passed directly upon this particular question, general principles, as well as the decisions on similar cases from other jurisdictions, require us to hold that, in the absence of any well-founded showing that it was the intention of Jonathan Plowman that the last child who survived, and who happened to die without issue surviving, was to have her estate terminated upon the failure of both conditions mentioned in the will, *viz.*, dying without lawful issue and being survived by a

brother or sister, it must necessarily be held that Rachel Plowman took a fee-simple estate, which was subject to being disposed of by her will. As indicated above, we think this conforms to the testator's actual intention manifested by the language used, and conforms to the weight of authority in American courts, and, by so holding, none of the tenets peculiar to the law of real estate or the construction of wills are violated.

We are of the opinion that when Rachel Plowman became the last child of Jonathan Plowman to survive, the estates given her by the sixth and ninth paragraphs of his will became fee-simple interests and subject to her disposition by will.

The decree of the circuit court of Macoupin County was erroneous, and it is reversed and the cause remanded, with directions to proceed in a manner not inconsistent with the views expressed herein.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE SIMPSON took no part in the consideration or decision of this case.