(No. 31805.—■)

MILDRED TRABUE *et al.*, Appellees, *vs.* LUTHER GILLHAM *et al.*—(MILDRED CHAPPELL *et al.*, Appellants.)

*Opinion filed January 18, 1951—Rehearing denied March 20, 1951.*

. G. R. SCHWARZ, and DUHADWAY & SUDDES, both of Jerseyville, (JOHN S. SELF, and CLAUDE J. DAVIS, of counsel,) for appellants.

JACOBY, PATTON & MANNS, of Alton, (JOHN F. MC-GINNIS, and FRANK L. MANNS, of counsel,) for appellees.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Ephraim S. Chappell died in 1893, leaving his five children surviving. Under the second clause of his will he devised certain farm property to his son John for life and then provided that "at the death of the said John Frederick Chappell, I devise the real estate herein given him for life, to his children and the descendants of any deceased child

of his, in fee simple, the descendants of any deceased child to take the portion such deceased child would be entitled to if living." Similar devises of different properties were made to each of three other children of the testator and their descendants. The seventh clause of the will provided that "In case any of my said children shall die leaving no issue I desire and direct that the real estate herein given for life to such child or children as shall leave no issue to vest in fee simple in the children of the brothers and sisters of any such deceased child of mine per stirpes."

At the time the will was executed, and at the death of the testator, his son John had a child, Laverne. Laverne died in 1918 without a wife or descendants, leaving his father and mother as his heirs. His father and mother were thereafter divorced, and the mother deeded her interest in the real estate to the father, John Chappell. John then remarried and died leaving no issue surviving him, but leaving a will by which all his property was devised to his second wife, Mildred Chappell, a defendant herein.

On July 28, 1948, certain of testator's grandchildren and descendants of deceased grandchildren filed this suit in the circuit court of Jersey County praying for a partition of the real estate and claiming title under the seventh clause of the will. Defendant Mildred Chappell filed an answer claiming title through the second clause of the will. The circuit court entered a decree for the plaintiffs, finding testator's intention to be that if no issue of the life tenant John Chappell was surviving at the time of the latter's death, title should be vested in the children of his brothers and sisters under the provisions of the seventh clause. Defendants Mildred Chappell and Ralph Bartlett, her tenant, have appealed to this court, contending a proper construction of the will requires that upon testator's death the life tenant's son, Laverne Chappell, took a vested remainder subject to be opened up to let in after-born children of the life tenant and subject to be divested only in the event of

the remainderman's death leaving a descendant surviving him; and that when Laverne died leaving no descendant surviving him his title became absolute and descended to his heirs.

The decisive question presented is whether the words "die leaving no issue," appearing in the seventh clause, mean die without issue surviving the life tenant, as appellees claim, or die without ever having had issue, as appellants contend. The determination of this question depends, of course, upon the intention of the testator as gathered from the language he used. In support of their contention appellants rely upon decisions of this court to the effect that, unless a contrary intent is shown in the will, the words "die without issue" are to be construed as meaning "die without having had issue." They also point out distinctions which have been made between the situation where there is no independent gift to the children of the first taker but merely an estate of inheritance with a gift over on death without issue, and the situation where a devise for life is followed by a remainder to the life tenant's children and then a gift over, in which case the remainder to the life tenant's children is usually held to vest immediately on birth. (See *Tolley* v. *Wilson*, 371 Ill. 124.) It is further argued that the policy of the law to favor vested interests requires a conclusion that the remainder vested in Laverne upon the testator's death, subject to being opened up and diminished in quantity by the birth of other children to the life tenant, and that upon Laverne's death prior to that of the life tenant the remainder descended to his heirs subject to the same qualification.

The rules urged, however, can govern only where a contrary intention is not shown by the language of the will. If words are used indicating an intention that the remaindermen must survive the life tenant in order to take, such intention will be given effect. Thus in *Spengler* v. *Kuhn*, 212 Ill. 186, testator created a trust for the benefit

of his wife and then provided that upon her death or remarriage "the trust estate hereby created shall at once cease, and the trust property shall thereupon go to and the title to the real estate become vested in my children, and the whole of my estate remaining unconsumed and constituting such trust fund shall be divided equally between them, share and share alike, and if, in the meanwhile, any or more of my children shall have died leaving a descendant or descendants, such deceased child's share shall go to his or her issue, descendant or descendants." It was held that the persons to take were such of the children of testator as were alive at the termination of the life estate and the descendant or descendants of such of the children who had died.

We think the testator's language in the case at bar also discloses an intention that those to take upon the death of the life tenant should be ascertained at that time. The words "die *leaving* no issue" indicate that the gift over provided in the seventh clause was to take effect in case the life tenant had no issue surviving at his death. The devise to descendants of any deceased child, in employing the phraseology "the portion such deceased child would be entitled to *if living*," is consistent with an intention that such child should not become entitled to an interest unless he were living at the death of the life tenant. It is to be observed also that in the *Tolley case* the court qualified the application of the rule stated therein by limiting it with these words: "In the absence of explicit contexts controlling the meaning of the word 'without' two distinctions require consideration." Then follows the distinction pointed out above. The context of the words in the will are such as to prevent the application of the general rule of interpretation argued in the *Tolley case*. Moreover, the dominant plan of the testator, as reflected in the will, is to keep title to the property in his own descendants. This purpose, it would seem, is more likely to be served if, upon the death of his

child without descendants then living, the property would go to his other grandchildren rather than to the general heirs of a grandchild who had predeceased its parent.

Appellants' position that Laverne had a remainder subject to being divested upon the birth of descendants followed by his death prior to that of the life tenant would not ordinarily be the understanding of a layman from the words used in the will. The gift following the life estate is to children *and* the descendants of any deceased child. The interest of descendants is in terms given the same status as that of the children, and is to arise at the same moment the children's interest comes into existence. It is not put in the form of an executory devise but, like the children's interest, appears as a remainder following the life estate.

We conclude that the words "die leaving no issue," as used in this will, mean "die without issue surviving;" that as John Chappell died leaving no issue surviving, title passed to the children of his brothers and sisters; and that the circuit court did not err in granting partition. Its decree will accordingly be affirmed.

*Decree affirmed.*