(No. 32286.—

FANNIE G. BURKHOLDER, Appellee, *vs.* HARRY E. BURK-
HOLDER *et al.,* Appellants.

*Opinion filed June 4, 1952—Rehearing denied September 15, 1952.*

J. J. Ludens, of Sterling, for appellants.

Jesse W. Johnson, of Nevada, Iowa, for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

A decree of the circuit court of Whiteside County construed the last will and testament of Christian Burkholder and ordered partition of real estate in the city of Sterling between the plaintiff, Fannie G. Burkholder, and one of the defendants, Harry E. Burkholder. This appeal followed, a freehold being necessarily involved.

Christian Burkholder, a resident of Sterling, died testate on January 12, 1926. He left surviving as his only heirs-at-law his wife, Mary Burkholder, and their five children, Charles, Charlotte, Harry, Homer and Alice.

By the third paragraph of his will, Burkholder made the following provision: "I give, devise and bequeath to my said wife all the real property of which I may be possessed at the time of my death, to be by her used and disposed of during her natural life, the same as I might do were I living, hereby giving to my said wife full power to sell, exchange, mortgage, invest and reinvest in the same manner as I might do were I living, and to use so much of the income and principal thereof as she may desire, she to have full power and authority to make proper deeds of

conveyance; provided that in case of her remarriage her power of disposition shall cease and she shall in that case have only the use of said property." The fourth paragraph states: "In case my said wife shall not survive me, or that any of the property mentioned in the fourth paragraph is undisposed of at the time of my said wife's death, I give, devise and bequeath all of said real property in equal portions to my children, Charles, Charlotte, Harry, Homer and Alice; and in case any of them die leaving surviving them a child or children, such child or children to receive the share the parent would have taken." Apparently, the reference to "the property mentioned in the fourth paragraph" was an inadvertent error. The context makes it clear that the third paragraph was intended. The parties have so construed the will, and we agree with that construction.

Homer Burkholder, one of the testator's sons and a resident of Iowa, died testate in 1935, without issue. By the residuary clause of his will, admitted to probate in Linn County, Iowa, in 1935, he left whatever interest he possessed in the property here involved to his wife, Fannie G. Burkholder.

Mary Burkholder, the testator's widow, died intestate on January 3, 1938, leaving as her only heirs-at-law her four children, Charles Burkholder, Charlotte B. Keefer, Harry Burkholder and Alice B. Scott. Thereafter, in July, 1938, Charles Burkholder and his wife, Charlotte B. Keefer and her husband, and Alice B. Scott conveyed their interests in the property to Harry Burkholder. In 1946, Harry Burkholder sold portions of the property to the Socony Vacuum Oil Company and Charles P. Danreiter.

Homer Burkholder's will was admitted to probate by the county court of Whiteside County on September 2, 1947. On December 9, 1947, the plaintiff, Fannie G. Burkholder, filed her complaint in the circuit court of Whiteside County against the defendants, Harry Burkholder, Socony Vacuum Oil Company, Danreiter, and five others who are

tenants, alleging that as sole devisee of her husband, Homer Burkholder, she owns an undivided one-fifth interest in the property as a tenant in common, the remaining four-fifths interest being held by defendant, Harry Burkholder. The relief sought was partition of the real estate and an accounting. Defendants answered the complaint, denying its material allegations. The cause was referred to a master in chancery who recommended the entry of a decree denying plaintiff's prayer for relief. Exceptions to the master's report were sustained by the circuit court. The decree entered by the court found that the interest of Homer Burkholder in the property became indefeasible at his death and passed a fee simple absolute under his own will to plaintiff; that, because of constructive notice given by the registration of the will of Christian Burkholder in 1926, the defendants were not *bona fide* purchasers without notice of plaintiff's interest, and that, under the circumstances of this case, defendant Harry Burkholder, the tenant in common, had not been in such adverse possession of the property as to be adjudged the sole legal owner under the seven years' Statute of Limitations. (Ill. Rev. Stat. 1951, chap. 83, par. 6.) Accordingly, plaintiff was adjudged the owner of an undivided one-fifth interest in the property of which Christian Burkholder died seized and Harry Burkholder of an undivided four-fifths interest; partition was ordered and the accounting sought was granted.

To reverse the decree, the principal defendant, Harry Burkholder, (hereafter defendant,) puts forth as his main contention the argument that plaintiff has no title to the property because the estate devised to Mary Burkholder was one in fee, thus rendering the remainder interests of the children void. However difficult a problem this contention may have once posed in this State, (*Sweet* v. *Arnold,* 322 Ill. 597,) it is now well settled that, under the language employed by the testator, the devise to Mary Burkholder

must be held to be a life estate with power of use and disposition during her lifetime. (*Knisely* v. *Simpson,* 397 Ill. 605; *In re Estate of Fahnestock,* 384 Ill. 26; *Keiser* v. *Jensen,* 373 Ill. 184; *Cales* v. *Dressler,* 315 Ill. 142.) Indeed, the language here used indicates far more strongly than did the language in the four cited cases an intention to limit the bequest to a life estate. The testator here delineated the devise to his wife with the phrase, "to be by her used and disposed of *during her natural life,"* thus limiting the power of disposition to her lifetime, and precluding a disposition by will. (Italics supplied.) No such phrase appears in the *Knisely case* (outright gift to the widow with power to sell and convey "the same as I might do were I living and this at any time she thinks best," followed by a clause directing, as the testator's "wish," that what is left of his property at the death of his wife go to certain named individuals); the *Fahnestock case* (outright gift,—"all the rest * * * of my estate * * * I * * * bequeath unto my wife * * * to have and to hold as her own and to do with as she sees fit,"—followed by the gift over of any portion of the estate unexpended at the wife's death); *Keiser* v. *Jensen* (completely unqualified gift to the wife—"I give * * * to my wife all of my property"—with the succeeding paragraph specifying that, "If at the decease of my wife * * *, there shall be any real estate or personal property left, it is my request that it be divided between my three children * * *), or *Cales* v. *Dressler* (provisions almost identical to those described in the *Fahnestock case*); yet this court in each of these cases found the estate granted the widow one for life only. Our conclusion, therefore, is that the testator intended his wife to have a life estate with power to dispose of the property during her lifetime, but not by will, and that, if any of the estate remained undisposed of at her death, it was to pass in the manner directed by the remainder provision of the fourth paragraph.

Defendant advances several other grounds to show a lack of title in the plaintiff. His contention that Homer Burkholder took nothing under his father's will because of the rule that where the testator makes a gift to a class of persons, only those alive at the time of the vesting will take, merits little discussion. In view of the fact that the beneficiaries here are named and cannot increase in number, and in view of the provision for the gift over of the parent's share to a surviving child or children, it is clear that the testator regarded the takers of the gift as individuals and not as a group. Carey and Schuyler, Illinois Law of Future Interests, pp. 333-340.

Defendant apparently makes the further argument, however, that, under Christian Burkholder's will, Homer Burkholder had to survive the life tenant in order to receive his share of the property, and, upon his failure to do so, a partial intestacy resulted since Homer Burkholder left no surviving child who could take under the alternative gift over. Under the fourth paragraph of his father's will, Homer Burkholder took a vested remainder subject to being divested. The crucial consideration is, what were the conditions under which his interest would be divested? Under *Harris Trust and Savings Bank* v. *Jackson, ante,* p. 261, (May term, 1952,) the phrase, "in case any of them die * * *," in the concluding clause of the fourth paragraph must be construed, "in case any of them die before the life tenant dies * * *." But, unlike the *Jackson case,* the condition of death before the life tenant's demise is here immediately linked with another qualification, "leaving surviving them a child or children." The will thus admits of the construction that, to effect a divestiture, Homer Burkholder's death before that of the life tenant must be coupled with the existence of a surviving child or children.

The purpose of such a testamentary plan is obvious: if any of the remaindermen died before the widow, leaving

surviving children, it was the testator's intention to insure that the latter received the parent's share; if, however, death occurred without surviving child or children, the testator was content to leave the estate in the deceased remainderman, to be disposed of either by the latter's will or by the law of intestacy. It can be argued that, giving the words employed their normal and ordinary meaning, it is difficult to ascribe to the concluding clause of the fourth paragraph a different intention. Further, the fact that, under a contrary interpretation, the testamentary scheme becomes incomplete is of some significance. Since both at the time of the drawing up of the will and at the date of his death, the testator must have been aware that some of his children had, as yet, no issue, the omission of any provision for the contingency of death without surviving children gives added support to the conclusion reached. Under this interpretation, it follows that, upon Homer Burkholder's death without leaving a surviving child, his portion of his father's estate became indefeasibly vested.

Even if the construction be adopted that the sole condition of divestiture was Homer Burkholder's death before that of the life tenant, no different result is reached. The issue then presented is whether the failure of the gift over rendered Homer Burkholder's estate absolute, or was immaterial to the question of divestiture, thus effecting an intestacy as to the portion of the estate here involved.

Since, in most situations of this nature, the testator has simply failed to envision the death of his beneficiary without issue or some similar contingency, it is difficult to ascertain any clear intent on his part upon the instant question. The intent, if it is to be found at all, must be gleaned from a careful scrutiny of the language employed, the particular method of setting up the gift over, and the overall testamentary plan shown. Are there any factors in this case tending to show either that the condition of surviving the life tenant is "independently annexed," (Judge Learned

Hand, in *Boal* v. *Metropolitan Museum of Art*, 292 Fed. 303, 305,) or that the effectiveness of the gift over to the surviving child or children is also a circumstance upon which divestiture is conditioned? The will admits of the construction that the testator here considered the existence of children to be a part of the divesting contingency. Factors persuasive, to a varying degree, in reaching this conclusion are that the bequest to Homer Burkholder is first made absolutely and only afterwards qualified by the gift over to the surviving child or children upon Homer Burkholder's death before the life tenant; that, under the particular language employed, the divesting contingency is a tightly integrated one, in which reference to Homer Burkholder's death is closely associated with the survival of a child or children, and, finally, that the testamentary scheme provided fully and equally for all five children as remaindermen.

The same result is reached if the problem be approached by the more technical method of determining whether the fee in remainder to Homer Burkholder was one on condition or limitation. Words which mark out the original bounds of an estate and limit its duration are words of limitation, while those purporting to cut short an estate previously limited unqualifiedly are words of condition. The latter create estates on condition, the former qualified (also called base or determinable) estates. (See: *McGlothlin* v. *McElvain*, 407 Ill. 142.) If the testator has created a qualified estate, then obviously the failure of the executory limitation over can never make such an interest absolute since the condition is annexed to, or a part of, the actual estate bestowed; if there is an estate on condition, however, the converse holds. (*McGlothlin* v. *McElvain*, 407 Ill. 142; *Boal* v. *Metropolitan Museum of Art*, 292 Fed. 303; reversed on other aspect, 298 Fed. 894; *Leonard* v. *Burr*, 18 N. Y. 96; Carey and Schuyler, Illinois law of Future Interests, secs. 173-176.) In view of the language

here employed, there can be no doubt that the fee in remainder to Homer Burkholder was one on condition subsequent: the devise to him is first given unqualifiedly and only afterwards, subjected to the condition. It follows that, upon failure of the gift over because of the absence of any surviving child, Homer Burkholder's conditional fee became a fee simple absolute. *McGlothlin* v. *McElvain*, 407 Ill. 142; *Knight* v. *Pottgieser*, 176 Ill. 368, (as interpreted by *Smith* v. *Shepard*, 370 Ill. 491, and *Warrington* v. *Chester*, 294 Ill. 524;) Kales, Estates and Future Interests, 2d ed., pp. 690-691; Simes, Future Interests, sec. 771.

The *McGlothlin case* is in point and determinative of the present issue. The court there adopted the rule, in accordance with the prevailing weight of authority in American courts, that, in the absence of any well-founded showing that the testator intended the contrary, the failure of the gift over renders a conditional estate absolute. Since, in the instant case, the only evidence of the testator's intention favors the latter construction, it follows that under any interpretation of Christian Burkholder's will, the property here involved passed to the plaintiff under her husband's will.

Defendant next asserts that plaintiff has not complied with the Probate Act, to the extent that it relates to the probate of foreign wills, and that until this is done no title of any kind passes, even though it be conceded that plaintiff's claim is valid. Section 85 of the Probate Act (Ill. Rev. Stat. 1951, chap. 3, par. 237,) provides that a foreign will may be admitted to probate in Illinois "when (a) the will has been admitted to probate outside of this State * * *." Since Homer Burkholder's will was admitted to probate in Iowa in 1935, the will was admitted to probate, on this basis, in Whiteside County, Illinois, on September 2, 1947. Defendant's argument centers, however, on section 89 of the Probate Act, (Ill. Rev. Stat. 1951, chap. 3, par. 241,) which declares that the admission to

probate in Illinois of a will executed and proved in the manner provided shall have the same effect in all respects as admission to probate of a domestic will and provides that the issuance of letters testamentary or of administration may be dispensed with if the court finds that all claims in this State are paid and the persons in interest desire to settle the estate without administration in this State. Asserting that Homer Burkholder owed his brother, Charles Burkholder, a resident of North Carolina, the sum of $10,000 which had not been paid at the time of the instant proceeding, defendant apparently contends that the failure to issue letters testamentary or of administration renders the entire probate proceeding invalid.

The statute does not show an intention to compel ancillary administration of the estate of a nonresident of Illinois where no debts are owing in this State and where administration is unnecessary. (*Martin* v. *Central Trust Co. of Illinois,* 327 Ill. 622.) We are of the opinion that, upon the record made, there has been sufficient compliance by plaintiff with the Probate Act. In the exercise of the judicial discretion vested in him, the judge of the county court of Whiteside County, after admitting the will to probate, entered an order reciting, "No further proceedings will be had." No appeal was taken from the order admitting the will to probate. Nor has any action to contest the validity of the will been instituted. Moreover, upon admission of a foreign will to probate in Illinois, it is valid for all purposes, and it cannot be collaterally attacked in any other proceeding. *Sternberg* v. *St. Louis Union Trust Co.* 394 Ill. 452.

Finally, defendant asserts that, since he was in actual possession of this property and paid all taxes and assessments thereon for over seven years, he acquired legal title under section 6 of the Statute of Limitations. (Ill. Rev. Stat. 1951, chap. 83, par. 6.) The short answer to defendant's argument is that there has been no possession for the

statutory period adverse to the plaintiff, as required by law. For one tenant in common to acquire title against another under the provision invoked by defendant, there must be overt and notorious acts of exclusive ownership sufficient to apprise the cotenant that an adverse possession is intended to be. asserted by the tenant in possession; only when possession assumes such character does the limitations period begin to run. (*Dunlavy* v. *Lowrie*, 372 Ill. 622; *Andrews* v. *Floyd*, 308 Ill. 559.) Examination of the record before us reveals the absence of the required factual foundation for the application of the Statute of Limitations.

The decree of the circuit court of Whiteside County is affirmed.

*Decree affirmed.*