GERTIE ETHEL SPAUGH et al., Plaintiffs-Appellees, v. AUSTIN HERMAN FERGUSON et al., Defendants-Appellees.—(BAPTIST STUDENT FOUNDATION AT UNIVERSITY OF ILLINOIS, Defendant-Appellant.)

(No. 11266;

Fourth District—December 7, 1970.

Franklin, Flynn & Palmer, of Champaign, (Leonard T. Flynn, of counsel,) for appellant.

Mitchem, Hendrix & Aldeen, of Urbana, (John M. Mitchem, Charles W. Hendrix and Michael Tepper, of counsel,) for appellees.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The Baptist Foundation appeals from a decree in partition involving the construction of the will of John T. A. Edmonson. The pertinent portion of the decree from which this defendant appeals is:

"11. That the true construction and meaning of the Will of JOHN T. A. EDMONSON, and particularly paragraph Third of said Will as gathered from the four corners of said Will and the circumstances existing at the time of the death of JOHN T. A. EDMONSON was that the said MABEL K. HOBART received a life estate in said real estate with the remainder therein after her death to her children or descendants of a deceased child living at the date of her death, but that if she had no child or descendants of a deceased child living at the date of her death the said real estate was to go to the heirs of JOHN T. A. EDMONSON according to the Statutes of Descent of the State of Illinois in effect at the time of her death. The court specifically finds that MABEL K. HOBART had no children or a descendant of a deceased child living at the date of her death and that the heirs of JOHN T. A. EDMONSON according to the Statutes of Descent of the State of Illinois in effect at the time of the death of MABEL K. HOBART were the brothers and sisters of the said JOHN T. A. EDMONSON and their descendants per stirpes."

In this case the testator, John T. A. Edmonson gave all of his property to trustees for the life of his wife, Valanchia Edmonson and then provided:

"THIRD. I give, devise and bequeath after the death of my wife, Valanchia Edmonson, all of my personal property, together with the aforesaid homestead property and any vacant lots in the said Village of Atwood, Illinois, remaining unsold to my said daughter, Mabel K. Hobart, to be her own absolutely, and all the rest and residue of my real estate wheresoever situated to my said daughter, Mabel K. Hobart for and during her life time, then to her children absolutely and to the decendants (sic) of any deceased child or children per stirpes, but if she has no children or there are no descendants of any child or children living at the time of her death, then to my heirs

according to the Statute of Decent (sic) of the State of Illinois in effect at the time of the death of my said daughter, Mabel K. Hobart." At the time of the death of the testator, February 24, 1924, she was survived by his wife, Valanchia Edmonson, who died intestate June 6, 1935, and his daughter, Mabel K. Hobart, who died March 4, 1969. Mabel K. Hobart had no children when the will was written or when the testator died. She had a son, Kent Hobart, born July 2, 1928, who died intestate July 28, 1952. Mabel K. Hobart's husband, Clyde Hobart, who was also the father of Kent Hobart, died March 23, 1953, leaving a will which made Mabel K. Hobart the sole legatee and devisee. By the will of Mabel K. Hobart, the Baptist Student Foundation at the University of Illinois was named residuary legatee and devisee.

Testator had seven brothers and sisters and numerous nephews and nieces, none of whom were mentioned in his will.

Defendant contends that upon the birth of Kent Hobart on July 2, 1928, the remainder became vested in him subject only to partial divestiture by the birth of other children to his mother and to complete divertiture by his death prior to that of his mother, leaving issue surviving him.

The trial court held that the will required that unless there were children or descendants of children of Mabel K. Hobart living at her death, the real estate should go to the heirs of the testator, John T. A. Edmonson, who are the plaintiffs.

Hence, defendant contends that two events must happen to divest Kent Hobart, a child of Mabel K. Hobart, of his remainder, to-wit: (1) death of Kent Hobart prior to that of his mother, the life tenant, and (2) leaving issue surviving him. It is argued that the only situation in which the testator contemplated that the grandchild's remainder would be divested would be survival of a grandchild by a great grandchild which would keep the property in the blood line. Defendant thus treats the mention of descendants of deceased children (of Mabel K. Hobart) as a gift over and contends that upon its failure (there being no descendants of Kent Hobart) the remainder in the first taken, Kent Hobart, became vested, discharged of the condition.

Since the cardinal rule of testamentary construction is the ascertainment, if possible, of the intention of the testator as expressed by the will itself (*Barnhart v. Barnhart*, 415 Ill. 303, 313, 114 N.E.2d 378, and *Harris Trust and Sav. Bank v. Jackson*, 412 Ill. 261, 266, 106 N.E.2d 188), and since the pursuit of this intention usually involves a determination whether the will discloses a plan of the testator (*Burkholder v. Burkholder*, 412 Ill. 535, 540, 107 N.E.2d 729) it should be helpful to examine the alternative situations which the will discloses might have been contemplated by the testator. We think they are the following situations:

(1) That Mabel K. Hobart might never have any children.

(2) That Mabel K. Hobart might have a child or children, who or all of whom, survived her.

(3) That Mabel K. Hobart might have a child, who predeceased her leaving no descendant, and also a child or children who survived her.

(4) That Mabel K. Hobart might have one or more children, who survived her, and one or more children, who predeceased her, all leaving descendants who survived her.

(5) That Mabel K. Hobart might have one or more children, who predeceased her, all leaving children who survived her.

(6) That Mabel K. Hobart might have one or more children, all of whom predeceased her, and all of whom had descendants who survived their parents but did not survive Mabel K. Hobart.

(7) That Mabel K. Hobart might have more than one child one of whom predeceased her leaving no descendants surviving him, and at least one of whom predeceased her leaving descendants surviving them, all of whom failed to survive Mabel K. Hobart.

(8) That Mabel K. Hobart might have one or more children all of whom predeceased her but none of whom ever had any descendants.

It seems clear to us that in making the gift to "her children, absolutely and to the descendants of any deceased child or children *per stirpes*", the testator clearly contemplated situations (2), (4), (5) and part of situation (3). In such situations clearly all descendants of Mabel K. Hobart described in the situation who survived her would take and the gift over to the heirs of the testator would not take effect.

It also seems clear that in providing "but if she has no children or there are no descendants of any deceased·child or children living at the time of her death, then to my heirs", the testator clearly contemplated situations (1) and (6) and in such case the property would go to the heirs of the testator. In first referring to "descendants of any deceased child or children, *per stirpes*", and then making a gift to the testator's heirs "if * * * there are no descendants of any child or children living at the time of her death" it seems clear that in order to take an interest the descendant of any deceased child of Mabel K. Hobart must survive Mabel K. Hobart.

Defendant contends that once a child is born to Mabel K. Hobart, that child can be completely divested of interest only by his death prior to that of his mother "leaving issue surviving him". Defendant makes no reference to the condition in the will that the descendant of a deceased child must survive Mabel K. Hobart, but only refers to the descendant of a deceased child surviving its parent. Thus by defendant's interpretation, if a child were born to Mabel K. Hobart in 1928 and the child died in

1952 leaving a child, there would be a complete divestiture of the child's remainder, but unless the grandchild survived Mabel K. Hobart's death in 1969, the latter would take no interest. The effect of birth of a grandchild in this case would be solely to divest the parent. Thus in situation (7) above the child who died without descendants would take to the exclusion of children who died leaving descendants who failed to survive the life tenant. In situation (3) above the estate of the deceased child, who had no descendants, would share with the children who survived Mabel K. Hobart. In situation (8) above, Mabel K. Hobart's deceased children's estates would have vested interests.

We find that to follow defendant's interpretation leads to results contrary to the plan. There is no direct reference in the will to any distinction between descendants of deceased children not living at the death of Mabel K. Hobart, who survived their parents, and those descendants who did not survive their parents. Thus we find no reference to situation (7) above.

To follow defendant's interpretation we must say the testator required a grandchild of the life tenant to survive the life tenant in order to take, but did not require a child of the life tenant to survive the life tenant. in order to take. We think that the only expressed thought of the testator in reference to future birth of grandchildren and their demise prior to the life tenant was in connection with the gift over to testator's own heirs. We must keep in mind that when the will was written and at the testator's death, there were neither children nor grandchildrn of the life tenant. Therefore, in reference to the gift over to his heirs he definitely thought of the possibility of the future birth of a child to his daughter, the future birth of a grandchild, the death of the child before the life tenant and the death of the grandchild before the life tenant. In such case we think the testator made a gift over to his heirs.

Defendant may argue that there are three conditions required to divest a child of his remainder, that is to say, death of a child before the life tenant, having a surviving descendant, who also survives the life tenant. Under this interpretation situations (6) and (7) would be alike in that the estates of all the children of Mabel K. Hobart would take to the exclusion of the testator's heirs. Also under this interpretation a child who survived the life tenant, the estate of a deceased child who had no descendants, descendants of a deceased child who survived the life tenant, and the estate of a deceased child who had descendants that failed to survive the life tenant would take equally. The difficulty with this interpretation is that if three conditions are required to divest the child's remainder, the only case left in which the property interest would pass to the testator's heirs would be where Mabel K. Hobart never had

any children. This disproves itself because if she never had any children there would be no occasion to provide for a gift over. The property would be intestate. There would, of course, remain the question when the heirs were determined. The will does refer to the heirs according to the Statute of Descent at the time of the death of Mabel K. Hobart.

In analyzing the terms of the gift over to the heirs of the testator it should be helpful to consider the placement of the phrase "but if she has no children". Since Mabel K. Hobart had no children at the testator's death, it can only mean if she has no children in the future. In reference to the context of the will this phrase can mean only two things, that is, if she never has any children or if she has children who are not living at her death. We think it cannot mean if she never has any children because in such case there could not be descendants of any child or children and it would have been unnecessary to refer to them in the gift over to the testator's heirs.

In the sentence structure the word "but, if she has no children or there are no descendants of any child or children living at the time of her death" can properly be read to mean that "living at the time of her death" applies to both "children" and "descendants of any child or children".

We think the testator's plan was much simplier than defendant makes it. He wanted his property to go to such of his descendants who were living at his daughters death, *per stirpes*, and if there were none, then living, to his heirs. Under such a plan the testator was only required to think in detail of two situations instead of the eight previously reviewed. They would be that he had descendants living at his daughter's death or he did not have.

Defendant cites *Burkholder v. Burkholder*, 412 Ill. 535, 107 N.E.2d 729. There a gift by the testator to his wife for life was followed by a devise of "all of said real property in equal portions to my children, Charles, Charlotte, Harry, Homer and Alice; and in case any of them die leaving surviving them a child or children, such child or children to receive the share the parent would have taken." The son, Homer, died testate, after the testator but before the life tenant and without issue. It was held that Homer's remainder was vested subject to divestiture only upon the condition of leaving issue surviving him. The court took note that the gift was to named persons, constituted a group which could not increase, and was followed by a gift over. In holding that it was not a class gift, the court said that the testator's plan was that in case any child died before the widow, leaving surviving children, the latter should receive the parent's share and otherwise the testator was content to leave the estate in the deceased remaindermen to be disposed of either by will

or the law of intestacy. The court said that the other interpretation would result in partial intestacy. The court noted that the gift was in form absolute and was subject to a gift over on a condition which failed. It cited *McGlothlin v. McElvain,* 407 Ill. 142; 95 N.E.2d 68. In that case the testator had seven children and devised each one some real estate. In a separate provision he said:

> "Eleventh: In the event of the death of any of my said children, without leaving them surviving lawful issue, I direct that the portion devised to such child be distributed share and share alike among my said children then surviving."

Rachel Plowman survived all of her brothers and sisters and died without issue. The court found that under the language of Item Eleventh only children of the testator could take the gift over and not grandchildren. It found that to divest the gift a person must die without issue and have a brother or sister surviving. The court held that if an executory limitation after an absolute estate fails the estate in the first taker is a fee. The court there cited *Howe v. Hodge,* 152 Ill. 252, 38 N.E. 1083, and *Quinlan v. Wickman,* 233 Ill. 39, 84 N.E. 38, for the proposition that a condition subsequent or limitation over is void by reason of being impossible, repugnant or contrary to law, the estate becomes vested in the first taker, discharged of the condition or limitation over.

While the facts in *Burkholder v. Burkholder,* 413 Ill. 535, 107 N.E.2d 729, and *McGlothlin v. McElvain,* 407 Ill. 142, 95 N.E.2d 68, are somewhat similar to the facts in the present case, they are also different in important respects. In each of those cases the gifts of the fee were gifts to named persons and there was but one gift over in each case. In the *Burkholder* case there was a gift over to surviving children. In the *McGlothlin* case there was a gift over to surviving brothers and sisters. The construction contended for by each of the unsuccessful parties would have resulted in intestacy.

■■ Here in case of the death of a child of Mary K. Hobart prior to her death, there were two gifts over in the alternative: to surviving children of the deceased child if living at the death of the life tenant, and to the heirs of the testator determined as of the death of the life tenant if there were no children of the deceased child living at the death of the life tenant. To make the *Burkholder* case similar to the present one there would have to be added a condition that if Homer Burkholder (or the other children) died without surviving issue then the property should go to the testator's heirs. To make the *McGlothlin* case similar an additional condition would have to be added to the effect that if Rachel Plowman (or the other children) died without surviving issue and also without a surviving brother or sister, the property should go to the

testator's heirs. The principle of those cases that when a conditional limitation upon an absolute estate fails the first estate becomes a fee does not apply when there are alternate limitations, one of which fails and the other of which could take effect.

The case of *Tolley v. Wilson*, 371 Ill. 124, 20 N.E.2d 68, cited by defendant to establish that the phrase "die without issue" means die without ever having had issue appears inapplicable for the reason that the Edmonson will evidences an intent to give to the testator's heirs in the event of failure to have descendants living at the death of the life tenant.

In our view, the rules for determining from the form of the gift whether it is contingent or vested and that the law favors early vesting of gifts in no way interfere with determining the intent of the testator from the language of the instrument and putting that intent into effect.

While we have concluded from a study of the will itself that the testator intended the property to go to his descendants *per stirpes* if any such descendants were living at the termination of the life estate, and if his line of descent failed then the property should go to his heirs, we also note that an almost identical situation was so treated in *Trabue v. Gillham*, 408 Ill. 508, 97 N.E.2d 341. While there are some differences in the *Trabue* case, the principles are much the same as those we adhere to.

Defendant makes the additional contention that the testator's heirs should be determined as of his death and that the gift over to the heirs of the testator would be a gift to his daughter. Defendant cites *Hull v. Adams*, 399 Ill. 347, 77 N.E.2d 706, and *Himmel v. Himmel*, 294 Ill. 557, 128 N.E. 641.

In the *Hull* case the testator devised a farm to his daughter for life, subject to an annual payment to testator's wife. There was no specific gift of the remainder on the daughter's death but there was a direction in a separate item as follows:

"Sixth: It is also my will, that after the decease of my said daughter, should she die without leaving issue surviving her, that in such a case I hereby order and direct that my said farm be sold and converted into cash, and after the payment of all necessary expenses that the proceeds of said sale be divided between my legal heirs in accordance with the laws of descent of the State of Illinois."

The daughter survived the mother and died without issue. It was assumed that if her mother was an heir she died intestate. The court held that in the absence of any indication that heirs were to be determined as of a later date, they would be ascertained as of the date of the testator's death. The court held that the life tenant daughter as the heir of the testator was the sole beneficiary of the farm. In the *Himmel* case, a

widow devised land to her son for life. A clause of her will provided: "Upon the decease of my said son I hereby direct that all my real estate heretofore devised to him for and during his natural life vest in fee simple in the issue of my said son surviving him, the descendants taking the share of any deceased child of said testator, but should he die without leaving issue surviving him, then it is my will that such real estate revert and go to my heirs as if no well had been made". The court held that the fact that the son was the life tenant and sole heir of the testator at her death was not a reason for postponing determination of testator's heirs beyond the date of her death, and found that the remainder in fee was in the son.

In *Barnhart v. Barnhart*, 415 Ill. 303, 312, 319, 114 N.E.2d 378, the court considered a situation where a testator first made provision for his widow and son and provided in a trust for the son which was to arise on the death of the widow, in part as follows:

"* * * and at his death all the remainder of the trust property shall be turned over and go, in absolute ownership, to the issue of his body, if such issue there be in life surviving him, and if there be no such issue surviving him, then to my heirs at law under the Statutes of Descent of the State of Illinois."

The will made a similar provision in the event the son should not survive the wife. The court, at page 319, summarized its view as follows:

"No Illinois cases have been cited by counsel for either side involving trusts like or nearly like that found in the will now under consideration. Courts in other States have held, however, in situations where similar trusts were involved and under wills having similar dispositive provisions that a gift to 'heirs at law' following provisions for the testator's immediate family and all of his lineal descendants must be construed as intending that such 'heirs at law' are to be determined as of the date of the termination of the trust and not as of the date of death of the testator. See: *Boston Safe Deposit and Trust Co. v. Blanchard*, 196 Mass. 35, 81 N.E. 654; *New York Life Ins. and Trust Co. v. Winthrop*, 237 N.Y. 93, 142 N.E. 431 and *Carter v. Martin*, 124 N.J. Eq. 106, 199 Atl. 589."

We think the intention to determine the heirs of the testator excluding the daughter as of the death of the daughter is stronger in the present case than in *Barnhart*. Here, the testator instead of simply referring to the Statutes of Descent referred to "the Statute of Descent of the State of Illinois in effect at the time of the death of my said daughter, Mabel K. Hobart". If the testator really intended that his daughter should receive the interest, we see little purpose in referring to an unknown legal

situation at the death of his daughter. It occurs to us that this reference more clearly stamps the intention to have the determination of heirs made as of the death of the daughter.

Defendant places much stress upon the use of the word "absolutely" following the gift to children of Mabel K. Hobart. Since in the same clause there is a gift to the descendants of any deceased child, and since none had been born at the testator's death, we cannot find the use of the word "absolutely" controlling. At best there was a remainder subject to divestiture on alternate conditions one of which happened, to-wit: failure to descendants. *Danz v. Danz*, 373 Ill. 482, 26 N.E.2d 872, cited by defendants, involved a life estate subject to a condition or remarriage where the testamentary scheme was thwarted by renunciation of the will and the remainders were accelerated. We do not find the case applicable.

The decree of the Circuit Court is affirmed.

Decree affirmed.

CRAVEN, P. J., and SMITH, J., concur.